STATE OF NORTH CAROLINA v. BILLY CHARLES BARRETT

No. 733SC796

(Filed 9 January 1974)

1. Homicide § 14— use of deadly weapon — presumption of malice

The use of a deadly weapon in a homicide raises a presumption of malice which renders the killing at least murder in the second degree.

2. **Homicide § 9— self-defense — reasonable force — jury question**
In this second degree murder case, evidence that defendant shot the victim while the victim was beating him with a pistol did not show that defendant acted in self-defense as a matter of law where there was also evidence that the victim had been shot in various parts of the body some four or five times and that the victim had tried to run when he was shot.

APPEAL by defendant from *Cowper, Judge,* 6 August 1973 Session of Superior Court held in PITT County.

Defendant was indicted for first degree murder as a result of the death of Johnny Lee Watson. The State elected to try defendant for second degree murder.

The State's evidence tended to show the following. While on routine patrol, Greenville Police Officers D. R. Bullock and Lt. Briley noticed a crowd gathering in front of Brewington's Lounge on 13 May 1973 at 11:30 p.m. After being informed by a bystander that the man lying on the sidewalk had been shot, Officer Bullock called the Rescue Squad while Lt. Briley talked to the victim, Johnny Lee Watson. Officer Bullock arrested defendant who was still at the scene. Bullock searched defendant for a weapon, and defendant volunteered that he had thrown the gun on top of Brewington's Lounge. The gun was never found. Bullock then requested Officer Nichols to take defendant to the hospital for treatment of a scalp wound. Although at this time Officer Nichols attempted to give full *Miranda* warnings, defendant spontaneously described the events and circumstances surrounding the homicide. Officer Nichols stated:

"Barrett told me that he and Johnny Lee Watson were arguing over money that Johnny Lee Watson owed him or money that he owed Johnny Lee. Barrett also stated that Johnny Lee Watson pulled a gun and was pistol-whipping him with it. Johnny Lee had hit him about the face and on top of the head. Then Barrett said, . . . 'and then I shot him.' After that, Barrett did not say anything else about the shooting, except that he had thrown the gun on the sidewalk."

Officer Nichols testified that he saw no weapons at the scene. As a result of the alleged beating, defendant sustained a cut on the back of his head and was bleeding from the nose and mouth.

The Pitt County Medical Examiner testified that the deceased had bullet wounds on the upper part of his left arm, on the back of his right thigh, and in the left abdomen. There were also two gunshot wounds in his right side.

Testifying in his own behalf, defendant asserted that deceased asked him for money and became argumentative when defendant claimed he did not have any. Defendant then went into Brewington's Lounge for a few minutes and upon going back outside was accosted by deceased who had drawn a pistol. Defendant described the ensuing fight as follows:

"Johnny Lee grabbed me in my collar and turned me around. When I tried to break aloose from him to run, he hit me back of the head and knocked me to the ground. Then he said, 'I am going to kill you. G—d—it, I am going to kill you right now.' I said, 'Lord have mercy; get this man off me, because I know he's going to kill me.'

At the time this was happening there were several persons around. I called for someone to get him off me, because I was afraid of bodily injury and I knew he was a bad man.

After he stomped me to the ground, he started hitting me with the pistol. Then he stood over me. At first, he hit me there (witness indicating). Then I got dizzy and almost passed out. He just kept beating me. I said, 'Lord have mercy; get this man off me,' and he said, 'g . . d . . . it, I am going to kill you right now.' Then somebody came outside and he looked back. While he was looking back, I tried to run, but he caught me and started beating me again. I finally messed around and got a chance to shoot him.

I had a pistol on me, but I was just intending to try and get him off me.

I did not owe Johnny Lee Watson any money, but he was trying to borrow some money from me.

(DEFENDANT COMES IN FRONT OF JURY.) I was down like this, and Johnny Lee beat me down on my knees. All of the time I was crawling, trying to get away, and he was still beating me. That is when the shooting occurred. I reached in my blouse and shot him."

Defendant also stated that he was afraid of deceased because he "knew that he had a character for violence and for being a violent and dangerous man."

Four defense witnesses testified that defendant and deceased were arguing over money, that deceased began beating defendant with a pistol, that defendant attempted to flee, and that defendant finally shot deceased. There was also testimony that deceased was the first to draw a gun.

On cross-examination, one defense witness stated, "I cannot explain how the man was shot on all four sides in self-defense." Another defense witness, responding to the State's question, testified: "When the shots were fired, I saw the man try to run. I did hear these shots. After that, I did not see what he did with the pistol. I wasn't looking at it. I saw the man when he was turning around and trying to run. Then he hit the cement between the sidewalk."

Defendant moved for a nonsuit when the State rested its case and renewed the motion at the close of all the evidence. The motions were denied. Upon a verdict of guilty of voluntary manslaughter, defendant was sentenced to an active prison term of five years. Defendant appealed.

*Attorney General Robert Morgan by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*Richard Powell and Samuel S. Mitchell for defendant appellant.*

VAUGHN, Judge.

[1] Defendant contends that "the trial court committed prejudicial and reversible error by failing to grant defendant's motions for . . . nonsuit." The use of a deadly weapon in a homicide raises a presumption of malice which renders the killing at least murder in the second degree. *State v. Cagle,* 209 N.C. 114, 182 S.E. 697; *State v. Johnson,* 184 N.C. 637, 113 S.E. 617. This presumption is sufficient to enable the State to withstand a motion for nonsuit. *State v. Cagle, supra; State v. Johnson, supra.*

[2] The presumption of malice is rebuttable. The thrust of defendant's argument is that the evidence demanded a finding that, as a matter of law, defendant acted in self-defense and

thus the shooting was both justified and without malice. Whether the evidence rebuts the presumption of malice in a homicide with a deadly weapon is a jury question. *State v. Capps,* 134 N.C. 622, 46 S.E. 730. This rule applies where a defendant claims self-defense. Before a plea of self-defense will excuse a homicide, the defendant must satisfy the jury that he used only such force as was actually necessary or apparently necessary to avoid serious bodily injury or death. The reasonableness of defendant's action and of his belief that force was necessary presents a jury question to be resolved on the basis of the facts and circumstances surrounding the homicide. *State v. Gladden,* 279 N.C. 566, 184 S.E. 2d 249; *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24.

We have considered defendant's other assignments of error and find them to be without merit. We find no prejudicial error in defendant's trial.

No error.

Judges MORRIS and HEDRICK concur.