STATE OF NORTH CAROLINA v. CHARLES ROBERT POTTS

No. 326A92

(Filed 10 September 1993)

1. **Homicide § 83 (NCI4th) — first-degree murder — self-defense — deadly force reasonable to repel attack but then continued unnecessarily — instructions**

    The trial court did not err in its instructions on self-defense in a first-degree murder prosecution where defendant contended that *State v. Robinson*, 188 N.C. 784, provides for a finding of guilty of manslaughter when the defendant reasonably uses deadly force to repel an attack but continues to use it when it is no longer necessary. *Robinson* should not be read to hold that once a defendant can no longer reasonably believe he is in danger that he may continue to

STATE v. POTTS

[334 N.C. 575 (1993)]

use deadly force and be found guilty of no more than manslaughter; in such a case, the defendant would be guilty of murder.

**Am Jur 2d, Homicide § 139.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

2. **Homicide § 86 (NCI4th)— first-degree murder—instructions on result of defendant's aggression—no error**

The trial court did not err in a first-degree murder prosecution by instructing the jury that the defendant would not be entitled to a verdict of not guilty if he was the aggressor in the fight where there was evidence from which the jury could believe the defendant was the aggressor.

**Am Jur 2d, Homicide §§ 145 et seq.**

3. **Homicide § 596 (NCI4th)— first-degree murder—self-defense —instructions**

The trial court did not err in a first-degree murder prosecution in its instructions on self-defense where defendant contended that the jury instructions on self-defense were disorganized, impossible to understand, conceptually confusing, and contained logical inconsistencies. The court at one place in the charge explained self-defense with its several facets and at other places referred to self-defense as necessary to explain how to apply it; it was not necessary to label or to compare the different types of self-defense so long as they were correctly explained; and the statements that the State had disproved self-defense if it proved that defendant acted unreasonably and that the defendant would have a partial defense and would be guilty only of voluntary manslaughter if defendant used more force than was reasonable were not inconsistent and were correct statements of the law.

**Am Jur 2d, Homicide § 519.**

4. **Homicide § 484 (NCI4th)— first-degree murder—instructions— definition of malice**

The trial court did not err in a first-degree murder prosecution by instructing the jury that it should find that defendant acted with malice if he killed without just cause, excuse

or justification. Although defendant contended that this instruction could result in an inconsistency, this has been the definition for many years in North Carolina and the Supreme Court did not believe the instruction could have been misinterpreted by the jury.

**Am Jur 2d, Homicide § 500.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Modern status of rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

5. **Evidence and Witnesses § 668 (NCI4th)— first-degree murder— expert testimony—no objection at trial—no plain error**

There was no plain error in a first-degree murder prosecution where defendant did not object at trial to the admission of certain testimony by an expert in fiber identification and comparison. If the admission of this testimony was error, it was not a fundamental error.

**Am Jur 2d, Trial § 412.**

6. **Constitutional Law § 248 (NCI4th)— first-degree murder— evidence withheld by State—hearsay that someone else committed crime—motion for appropriate relief denied**

The trial court did not err by denying defendant's motion for a mistrial, properly denominated a motion for appropriate relief, in a prosecution for first-degree murder, but erred by ordering that no one but SBI agents contact a potential witness, where defendant produced testimony concerning a handwritten, unsigned note which alleged that someone other than defendant committed the crime; the note allegedly came from Chrisandra Hunt; the court continued entry of judgment and the term of court, ordered that no one involved in the case have any contact with Chrisandra Hunt, and requested an SBI investigation; after hearing the testimony of the SBI agent, the court found that the results of the investigation showed that no one had any personal knowledge of the matters recited in the note and that the note would not be admissible; and the court concluded that the note was not exculpatory and denied the defendant's motion. The court did not err by contin-

uing the hearing and ordering a further investigation because, although the testimony about the note was inadmissible, it might have led to evidence that was admissible; the court did not err by denying defendant's motion based on the evidence before it after the investigation because the investigation yielded evidence which hardly rose to the level of suspicion or conjecture; and the court erred by ordering that no one other than the SBI agents contact Chrisandra Hunt. The defendant should not have been restricted in his right to gather evidence for the hearing.

**Am Jur 2d, Criminal Law § 774.**

**Prosecutor's duty to disclose evidence favorable to accused under due process clause of Federal Constitution — Supreme Court cases. 87 L. Ed. 2d 802.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Johnson (E. Lynn), J., at the 8 May 1992 Criminal Session of Superior Court, Robeson County, upon a jury verdict of guilty of first degree murder. Heard in the Supreme Court 12 May 1993.

The defendant was tried for first degree murder. The State did not seek the death penalty. The State's evidence showed that on 7 September 1991 the body of Vonda Demery was found under an abandoned automobile.

Burnise Wilkins, the chief detective with the Robeson County Sheriff's Department, interviewed the defendant on 7 September 1991. Mr. Wilkins advised the defendant of his constitutional rights and the defendant made a statement to him. The defendant said that Vonda Demery and Lisa Demery had been living with him. The night before her death, the defendant had told Vonda she would have to move. The next evening, the defendant was sleeping on his couch when he was awakened because Vonda was cutting him on the arm with a knife. He then "reached out and grabbed the two by four off the floor, and hit her in the head[.]" Vonda fell to the floor and started making a "gurgling sound" which irritated the defendant. He then cut a piece of electric wire from the wall and held it to Vonda's throat until she died. The defendant then wrapped Vonda's body in a carpet and carried it to a wooded area where he left it. Mr. Wilkins testified that he did not see any marks on the defendant's arm.

After the defendant made the statement to Mr. Wilkins, he was carried to the Sheriff's office at which time he made another statement. This statement was substantially the same as the statement he had made to Mr. Wilkins, except he said he was awakened by the bumping of a table at which time he saw Vonda with a knife which she swung at him, cutting his arm. Robert Ivey, a detective with the Robeson County Sheriff's Department, testified that the defendant made a statement to him on 9 September 1991 which was consistent with his two previous statements.

On 29 October 1991, Mr. Ivey was informed by a jailer that the defendant wanted to talk to him. Mr. Ivey had the defendant brought to his office and the defendant told Mr. Ivey that he did not kill Vonda Demery. He said he had gone for a walk and when he returned Vonda was dead. He disposed of her body. The defendant said he thought Lisa Demery and Rodney Jacobs had killed Vonda.

The jury found the defendant guilty as charged. Immediately following the verdict, the defendant made a motion for a mistrial. This motion was based on what the defendant contended was a violation of the rule of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), which requires the State to deliver to the defendant any exculpatory material evidence in its possession.

The court held a hearing on this motion. As a result of this hearing, two agents of the State Bureau of Investigation (SBI) were sent to South Carolina to investigate certain matters which had been revealed at the hearing. After the SBI agents had made their report, the court denied the defendant's motion and sentenced the defendant to life in prison.

The defendant appealed.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for the defendant-appellant.*

WEBB, Justice.

[1] We shall consider first the defendant's contention that the court erred in charging on self-defense. This contention is based

on his reading of State v. Robinson, 188 N.C. 784, 125 S.E. 617 (1924), in which this Court held that it was error not to submit voluntary manslaughter to the jury when the evidence showed the deceased had fired one shot at the defendant and the defendant fired four shots at the deceased. This Court said the jury could have found that the defendant fired the first shot in self-defense but continued to fire unnecessarily which would make the defendant guilty of voluntary manslaughter.

The defendant says Robinson provides for a finding of guilty of manslaughter when the defendant reasonably uses deadly force to repel an attack but continues to use it when it is no longer necessary. He says that is what the evidence shows in this case.

The defendant says that the rule as formulated in recent cases such as State v. McAvoy, 331 N.C. 583, 417 S.E.2d 489 (1992) and State v. Mize, 316 N.C. 48, 340 S.E.2d 439 (1986), is inconsistent with Robinson. He says the court in this case charged the jury that unless the defendant acted reasonably throughout the incident he did not act in self-defense which is inconsistent with Robinson.

We do not agree with the defendant's reading of Robinson. In that case, the court charged the jury that the continued firing by the defendant could be found by the jury to be the use of excessive force. We do not believe Robinson should be read to hold that once a defendant can no longer reasonably believe he is in danger that he may continue to use deadly force and be found guilty of no more than manslaughter. In such a case, the defendant would be guilty of murder. This assignment of error is overruled.

[2]   The defendant next contends that the court committed error by instructing the jury that the defendant would not be entitled to a verdict of not guilty if he was the aggressor in the fight. He says there was no evidence that he was the aggressor. He bases this contention on his statements to the officers which were introduced by the State in which he said the fight started when Vonda Demery cut him on the arm. He argues that this was the only evidence of how the altercation was commenced and the State is bound by this uncontradicted evidence which it introduced.

The State could introduce evidence which showed the killing did not happen as the defendant told the officers. State v. Cooper, 273 N.C. 51, 159 S.E.2d 305 (1968). It did this by the testimony

of Mr. Wilkins which was that he did not see a scratch at the place defendant told him he had been cut by Vonda Demery. This would tend to show Vonda was not the aggressor in the fight. The jury did not have to believe all that the defendant said. It could believe a part and reject another part. *Brown v. Brown*, 264 N.C. 485, 14 S.E.2d 875 (1965). It could believe the defendant was the aggressor. This assignment of error is overruled.

[3] The defendant next contends that the jury instructions on self-defense were impossible to understand. He says first that the instructions on self-defense were disorganized. He argues that there was no one place in the charge at which self-defense was fully explained but references to self-defense were scattered throughout the charge. We do not so read the charge. It appears to us that the court at one place explained self-defense with its several facets and at other places in the charge referred to self-defense as necessary to explain how to apply it.

The defendant also contends the instructions on self-defense were conceptually confusing. He says the term "self-defense" was used in four different contexts. He concedes all of these instructions were legally correct but they gave no guidance as to how to connect them in a "coherent whole." As we read the instructions they are correct. The only example the defendant cites as to the failure to connect the charge is that perfect and imperfect self-defense were not separately labeled and compared. So long as the different types of self-defense were correctly explained, it was not necessary to label them or compare them.

Finally, the defendant says the charge contained "logical inconsistencies." The defendant says the jury was told that the State had disproved self-defense if it proved that the defendant acted unreasonably in killing the victim, and that the defendant would have a partial defense and would be guilty only of voluntary manslaughter if the defendant used excessive force which would be more force than was reasonable under the circumstances. The two statements are not inconsistent and they are correct statements of the law. *State v. Norris*, 303 N.C. 526, 279 S.E.2d 570 (1981); *State v. Deck*, 285 N.C. 209, 203 S.E.2d 830 (1974).

[4] The defendant also contends it was error to charge the jury that they should find the defendant acted with malice if he killed without just cause, excuse or justification. The defendant says if the jury interpreted the phrase "without just cause, excuse or

justification" to mean a full or complete excuse another inconsistency would result. He says this is so because under the interpretation the jury used it would have been directed both to find the defendant acted with malice unless he was fully excused and that it should return a verdict of voluntary manslaughter defined as killing without malice, even if the defendant was not fully excused on the ground of self-defense. The definition of malice, which was used in the charge in this case, is a definition we have had for many years in this state. *See State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979). We do not believe it could have been misinterpreted by the jury.

[5] The defendant next assigns error to the admission of certain testimony by John Bendure, an expert in fiber identification and comparison. An expert in this field examines fibrous materials such as clothing, carpet samples, ropes, string and tapes to determine if there is an association of any such material with a similar material found in another place. He testified that John Massey, who works with him and is also an expert in fiber identification and comparison, had conducted tests on fibers taken from the area in which the body was found and from the defendant's truck and home. Mr. Bendure testified from Mr. Massey's written report as to the conclusions Mr. Massey had made from the examination. The defendant says this was hearsay testimony and should have been excluded.

The defendant did not object to the admission of this testimony and it is not reviewable on appeal. N.C. R. App. P. 10(b). *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983). The defendant objected to a question as to whether Mr. Massey had received the materials for analysis but did not object to his testimony as to what the report showed in regard to the materials. At another point, the defendant objected to testimony by Mr. Bendure that a shoe string among the materials had been taken from the victim's neck but did not object to testimony as to how the sample of shoe string compared with a sample of shoe string found in the defendant's yard. The defendant's objections did not alert the judge to infirmities in a specified line of questions which would not require further objections. N.C.G.S. § 15A-1446(d)(10) (1988); *State v. Hunter*, 290 N.C. 556, 572, 227 S.E.2d 535, 545 (1976).

We do not believe we should apply the plain error rule to grant relief under this assignment of error. If the admission of

this testimony was error, it was not a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983), *quoting, United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis in original).

This assignment of error is overruled.

[6] We next address the defendant's assignment of error in regard to the post verdict hearings on the defendant's *Brady* motion. The defendant denominated the motion as one for mistrial. It should have been called a motion for appropriate relief. N.C.G.S. § 15A-1411 (1988). We shall treat it as a motion for appropriate relief. At the first hearing on the motion, Angela Lenhart testified that she lived in Dillon, South Carolina, and was the sister of Lisa and Vonda Demery. She testified that on one occasion she brought her thirteen year old sister Shannon Demery home from school. When her sister entered the automobile she handed Mrs. Lenhart a handwritten unsigned note that said "Lisa and Rodney [had] murdered Vonda." Mrs. Lenhart testified that Shannon told her she had received the note from a classmate named Cheryl who had received it from Chrisandra Hunt. Chrisandra Hunt is Mrs. Lenhart's cousin.

Mrs. Lenhart testified that she told Robert Ivey, a detective who was investigating the case, about the note but Mr. Ivey "said nothing about it" and her husband had destroyed the note. She testified further to certain things Lisa had told her which raised a suspicion that Lisa knew more about the killing than she had told.

Mr. Ivey testified that he had talked to Mrs. Lenhart on several occasions. He remembered that Mrs. Lenhart had told him that a cousin had told her that Lisa Demery and Rodney Jacobs had killed Vonda Demery and the cousin had overheard them discussing the killing.

On the basis of the above testimony, the court entered orders continuing the entry of judgment and continuing the term of court. The court ordered that no one involved in the case have any contact with Chrisandra Hunt. The court requested the regional supervisor of the State Bureau of Investigation to conduct an investigation. Pursuant to this request two SBI agents were sent to investigate the matter. The two agents were directed to investigate "a note that Angela Lenhart received from her sister, Shannon Demery,

which stated, 'Lisa and Rodney murdered Vonda'" and to determine whether the existence of such a note had been brought to the attention of investigators before trial.

After the two SBI agents had completed this investigation, they testified at a second hearing that they went to Dillon, South Carolina, and interviewed several persons in regard to the note.

Several people told them they had seen the note which said Lisa and Rodney had killed Vonda. The note had apparently been destroyed and no one was able to say who had written it. The agents interviewed Betty Morris, who was Vonda's aunt. Mrs. Morris told them that Rodney Jacobs and Lisa Demery had stayed with her for a few weeks after Vonda Demery's funeral. She recalled that Jacobs told her that it would have taken more than one person to carry Vonda's body into the woods, and that the section of carpet in which the body was wrapped came from the defendant's mobile home. Mrs. Morris told the agents that Jacobs told her he had persuaded his mother to create an alibi for Lisa by falsely stating that Lisa was staying with her the night of the murder. Mrs. Morris told the agents that she asked Rodney and Lisa whether they were involved with the murder and both of them "dropped [their] head[s] and laughed."

After hearing the testimony of the SBI agent, the court entered an order in which it found that the results of the investigation showed that no one had any personal knowledge of the matters recited in the note and the note would not be admissible under our rules of evidence. The court concluded that the note was not exculpatory and denied the defendant's motion. The court made no findings as to the testimony of the SBI agents as to their other investigations.

The withholding by the State of material evidence favorable to the defense has been divided by the United States Supreme Court into three categories, which are (1) the knowing use of perjured testimony or the failure to correct what the State knows is perjured testimony, (2) the withholding of evidence which is specifically requested by the defendant during discovery, and (3) exculpatory evidence in the possession of the State for which no request was made by the defendant. *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215; *State v. Craven*, 312 N.C. 580, 324 S.E.2d

STATE v. POTTS

[334 N.C. 575 (1993)]

599 (1985). The test for determining whether the withheld evidence is material and thus requires a new trial is different for each category. *State v. McDowell*, 310 N.C. 61, 310 S.E.2d 301 (1984). In *Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991), the United States Court of Appeals held that the exculpatory matter withheld by the State does not have to be admissible in evidence if it would lead to admissible exculpatory evidence. *Id.* at 418.

In this case, the defendant filed a motion requesting the State to disclose any exculpatory information in its possession including "[a]ny and all statements, oral or written, . . . which tend to . . . implicate others who may have committed the offense(s) for which defendant [was] charged." We believe this was a request for specific evidence in the possession of the State. In *Bagley*, the United States Supreme Court said such "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494.

In this case, the testimony of Mrs. Lenhart as to the note and the other matters would not have been admissible. It was largely hearsay. In addition, evidence that another person committed the crime for which the defendant is charged must point directly to the guilt of the other party to be admissible. It must do more than create an inference or conjecture in this regard. *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987); *State v. Hamlette*, 302 N.C. 490, 276 S.E.2d 338 (1981). This rule would have excluded the testimony of Mrs. Lenhart. The evidence which was withheld was not material.

We cannot say it was error for the court to continue the hearing and order a further investigation of the matter. Although the testimony of Mrs. Lenhart would not have been admissible, it might have led to evidence that was admissible. The investigation of the SBI agents did not produce anything helpful to the defendant. It yielded evidence which hardly rose to the level of suspicion or conjecture that someone other than the defendant committed the crime. It was not error for the court to deny the defendant's motion based on the evidence before it.

It was error for the court to order that no one other than the SBI agents contact Chrisandra Hunt. The defendant should

not have been restricted in his right to gather evidence for the hearing. This error may be corrected by having a new hearing and allowing the defendant the right to make whatever investigation before the hearing he feels is appropriate, including interviewing any person whom he desires. The court may appoint an investigator to aid the defendant upon a proper showing. N.C.G.S. § 15A-1421 (1988); N.C.G.S. § 15A-450(b) (1988); *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986).

For the reasons stated in this opinion, we find no error in the trial and sentencing but we remand for a new hearing on the defendant's motion for appropriate relief.

NO ERROR IN TRIAL AND SENTENCING; REMANDED FOR NEW HEARING ON MOTION FOR APPROPRIATE RELIEF.