STATE OF NORTH CAROLINA
v.
JOE LOUIS WITHERS.
No. COA08-85
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.
D. Tucker Charns, for defendant-appellant.
ELMORE, Judge.
This appeal arises out of a second trial after this Court found instructional errors in defendant's first trial on an indictment charging him with first-degree murder. See State v. Withers, 179 N.C. App. 249, 633 S.E.2d 863 (2006). At the second trial a jury found him guilty of the lesser offense of voluntary manslaughter. From a judgment entered on the jury verdict, defendant appeals.
By the sole assignment of error brought forward, defendant contends the trial court erred by denying his motion to dismiss for non-suit at the close of all the evidence.
The State presented evidence tending to show that on the night of 18 and 19 March 2004, defendant returned to his residence in High Point and encountered Terrell Walker inside the residence. Defendant ordered Walker to leave the house. Defendant went into his bedroom and retrieved a rifle. Tim McCoy and Ronald Hayes, who were also present in the residence at the time, pushed Walker out of the residence. Instead of leaving the premises, Walker remained on the front porch. Defendant retrieved his rifle again. McCoy intervened and the rifle fired accidentally into an air conditioning unit.
McCoy testified that after the gun accidentally fired, defendant opened the door, stood on the porch, and talked to Walker. Defendant directed Walker to leave the house or he would call the police. Walker walked off the porch and proceeded toward the foot of his car. McCoy further testified that at this point,
Joe said "you need to get in your car and leave, boy, because you don't think I'll shoot your a, do you?" And he said f____ you. And he reached toward Joe and Joe fired.
McCoy saw "a white t-shirt jump. . . ." Walker stated, "[y]ou shot me, you old bastard." Defendant pointed the gun at Walker and fired it again. Defendant did not say anything prior to firing the second shot at Walker.
McCoy saw Walker touch his neck, look at blood in his hand, and run. McCoy ran after Walker to check on him. McCoy found Walker, bleeding from his ear, on the stoop of a neighboring residence. McCoy heard Walker take his last breaths. McCoy knocked on the door of the house next door and asked the occupant to call the police. McCoy then left the scene. Neither Hayes nor McCoy saw Walker with a gun or knife that night.
A medical examiner who performed the autopsy of Walker testified that Walker had two bullet wounds, one under the chin where he located a .22 bullet, and the second on the left back and side. The gunshot wounds caused Walker's death.
Defendant testified that he walked into his residence and saw Walker in the living room bagging cocaine and drinking beer and whiskey. Walker told defendant that he had been given permission by defendant's roommate to stay there. Defendant told Walker to leave. Walker failed to leave, and defendant went into his bedroom to retrieve his .22 rifle. When he returned from his bedroom, Walker was gone. He put the rifle aside. He subsequently heard Walker's voice commanding defendant to open the front door. Defendant retrieved the rifle again. As he headed for the door, Tim McCoy tried to stop him. He and McCoy tussled, and the rifle "went off-pow."
Defendant opened the door and saw Walker standing at the passenger side of his vehicle. Walker advanced toward defendant, who was standing at the door of his residence, and attempted to jump on the porch. Defendant fired a shot. Walker returned to the automobile, retrieved the keys from the ignition, and opened the trunk. Defendant testified that at this point, "I said whatever he's going for, I'm not going to let him get it and that's when I shot him on the side here." Defendant stated, "I didn't know exactly what he was getting and I didn't give him time to get out of the trunk with it because my mind flipped back. I knew he had an AK-47." He never saw Walker display a gun. Defendant fired both shots from the doorway of his residence.
Defendant contends that the court erred in failing to grant his motion to dismiss for non-suit at the conclusion of all the evidence because the State failed to prove beyond a reasonable doubt that defendant had no choice but to shoot in self-defense.
In deciding a motion to dismiss or for non-suit, the trial court determines whether there is substantial evidence to establish each element of the offense charged and to identify the defendant as the perpetrator. State v. Earnhardt, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In considering a motion to dismiss, the trial court is concerned only with sufficiency of the evidence to carry the case to the jury and not its weight." State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). The court must consider the evidence in the light most favorable to the State, giving it the benefit of every reasonable inference that may be drawn from the evidence. State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). Contradictions and discrepancies in the evidence are to be disregarded and left for resolution by a jury. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).
The burden is upon the State to prove beyond a reasonable doubt that a homicide was not perpetrated in self-defense. State v. Potter, 295 N.C. 126, 143, 244 S.E.2d 397, 408 (1978). "To survive a motion to dismiss, the State must therefore present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that defendant did not act in self-defense." State v. Hamilton, 77 N.C. App. 506, 513, 335 S.E.2d 506, 511 (1985), disc. review denied, 315 N.C. 593, 341 S.E.2d 33 (1986).
A defendant acts in perfect self-defense, excusing a killing altogether, if: (1) it appeared to the defendant and he believed it reasonably necessary to kill the deceased in order to protect himself from great bodily injury or harm; (2) the defendant's belief is reasonable under the circumstances; (3) defendant did not aggressively and willingly enter into the fight without legal excuse or provocation; and (4) defendant did not use excessive force, i.e., did not use more force that was necessary or appeared reasonably necessary under the circumstances. State v. Norris, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). When the first two elements are established but the evidence also shows that the defendant acted as the aggressor or used excessive force, then the exercise of self-defense is imperfect and the charge of murder is reduced to voluntary manslaughter. Id., 279 S.E.2d at 573. Our General Assembly has also recognized one's right to defend one's habitation by enacting N.C. Gen. Stat. § 14-51.1, which provides as follows:
(a) A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.
(b) A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.
N.C. Gen. Stat. § 14-51.1 (2007). "In enacting N.C.G.S. § 14-51.1, the General Assembly broadened the defense of habitation to make the use of deadly force justifiable whether to prevent unlawful entry into the home or to terminate an unlawful entry by an intruder." State v. Blue, 356 N.C. 79, 89, 565 S.E.2d 133, 139 (2002).
Common to these defenses is the reasonableness of the defendant's actions and his belief that the use of deadly force was necessary. This Court has held that when a defensive killing is asserted, "[t]he reasonableness of defendant's action and of his belief that force was necessary presents a jury question to be resolved on the basis of the facts and circumstances surrounding the homicide." State v. Barrett, 20 N.C. App. 419, 423, 201 S.E.2d 553, 555-56, cert. denied, 285 N.C. 86, 203 S.E.2d 58 (1974).
Viewed in the light most favorable to the State, the evidence in the case at bar shows that defendant fired two separate shots at the victim, who was not armed with any weapon and was outside at his car, with a .22 rifle. Defendant acknowledged that he never saw the victim display a weapon.
Based upon this evidence we conclude a jury could find that defendant did not act in self-defense when he shot and killed Walker. We conclude the evidence created a jury question as to the reasonableness of defendant's belief that it was necessary to kill or use deadly force, whether defendant was the aggressor, and whether defendant use excessive force. We hold the court properly denied the motion to dismiss for non-suit.
No error.
Judges WYNN and GEER concur.
Report per Rule 30(e).