STATE OF NORTH CAROLINA,
v.
DAVID EARL PARNELL.
No. COA09-909.
Court of Appeals of North Carolina.
Filed March 16, 2010.
This case not for publication
Attorney General Roy Cooper, III, by Assistant Attorney General Kimberly W. Duffley, for the State.
Kathryn L. VandenBerg for defendant-appellant.
ROBERT C. HUNTER, Judge.
David Earl Parnell ("defendant") appeals from a judgment entered 10 February 2009 after a jury verdict finding him guilty of voluntary manslaughter. After careful review, we find no prejudicial error.

Background
The evidence at trial tended to establish that defendant and the victim, Michael Lanier ("Lanier") were neighbors in a community outside of Elizabethtown, North Carolina. The two men at one point considered themselves friends; however, on the evening of 31 December 2007, there was an altercation during which Lanier physically attacked defendant, punching him twice in the stomach and ramming his face into a tree. Defendant did not attempt to fight back because he had suffered a severe spine injury two years earlier and did not want to risk a potentially crippling injury. After this incident, defendant claimed that he and Lanier were no longer on good terms.
Defendant testified at trial that on 14 February 2008, Lanier came to defendant's trailer with several boxes of stolen goods that he wanted to store in the trailer. Defendant claimed that Lanier threatened him stating: "`before [Lanier] got busted and went back to prison, he would kill me and break my back, if he had to.'" Defendant was afraid that if he refused Lanier's request to store the goods in his trailer, Lanier would harm him. Defendant then went to his mother's trailer and told her what had happened and that he believed the goods belonged to their neighbors, the Bakers. Defendant's mother then called Kathy Baker and informed her that Lanier had stolen items from her and that they were being stored in defendant's trailer. That evening, defendant slept in his mother's trailer.
The following day, 15 February 2008, defendant returned home to find a window broken in his trailer. Defendant took the boxes of stolen goods out of his trailer and left them across the street so that they would no longer be on his property. Soon thereafter, defendant's brother, Terry Parnell ("Terry"), came over to defendant's trailer and told him that Lanier and a man named "Wright" were looking for him and one of the men stated: "`We have stuff at his house. We will get the mother f____." Defendant was concerned that Lanier would return and try to harm him, so he decided to arm himself with Terry's pistol.
Around mid-morning on 15 February 2008, defendant was applying a sealant to the roof of Terry's trailer when a neighbor, Timmy Parker ("Parker") approached and began conversing with defendant. Terry joined in the conversation and Lanier's uncle, David Lanier ("David") was also present. At that point, the men began drinking together at defendant's trailer. At trial, both Parker and David testified that defendant showed them the gun he was carrying and said that if Lanier came to his trailer he would shoot him. Defendant and Terry testified that defendant never showed the gun to the others or made threats concerning Lanier.
Parker testified that Terry and David left but he stayed at defendant's trailer to continue talking. Parker claimed that Lanier entered defendant's yard and asked defendant to "`come around the corner and talk with [him].'" Defendant refused and Lanier angrily walked away out of Parker's sight. Defendant then took out his gun and shot in the direction that Lanier had gone. Parker claimed that he did not know at that time whether Lanier had been shot and he decided to leave the scene.
Defendant gave a different account of the shooting at trial. Defendant claimed that Parker, Terry, and Michael left his trailer and he continued to drink beer on the couch with Terry's gun placed beside him in the cushions. He testified that Lanier then came to the door of the trailer and shouted "`I need to holler at you.'" Defendant replied, "I have nothing to say to you. You got me in enough trouble. Go the f___ on." According to defendant, Lanier then broke down the door. Defendant was afraid that Lanier would attack him, so he picked up the nearby gun and shot at Lanier once. He claimed at trial that he did not aim and it was not his intention to kill Lanier; rather, he just wanted to stop Lanier from assaulting him. After defendant shot the gun, Lanier ran out of the trailer and defendant was unsure whether Lanier had, in fact, been shot. Defendant walked outside of the trailer and found Lanier lying on the ground. Defendant took the gun and walked to his father's trailer and said, "[c]all 911. I just shot the [s.o.b.]" Defendant then waited outside of his father's trailer for the police to arrive. Lieutenant Steven Lesane ("Lieutenant Lesane") testified that he arrived at the scene and took defendant's statement. Defendant's version of events was substantially in accord with his subsequent testimony at trial.
Emergency workers found Lanier's body about 150 feet from defendant's trailer, and they were unable to revive him. The autopsy report showed that the cause of death was a single gun shot wound to the left upper back. The trajectory of the bullet was such that the bullet lodged in the chest wall approximately twelve and a half inches from the top of Lanier's head. The medical examiner testified that Lanier could have remained conscious and able to walk for approximately five minutes with the type of injury he suffered.
On 7 April 2008, defendant was indicted on one count of first degree murder of Lanier. At trial, the jury was instructed on the crimes of first degree murder, second degree murder, and voluntary manslaughter. On 9 February 2009, the jury found defendant guilty of voluntary manslaughter. Defendant was sentenced to 92 to 120 months imprisonment. Defendant timely appeals to this Court.

Analysis

I. Motion to Dismiss
Defendant first contends that the trial court erred in denying his motion to dismiss at the close of evidence because there was insufficient evidence to support a conviction of the lesser included offense of voluntary manslaughter.
In determining the sufficiency of the evidence to withstand a motion to dismiss and to be submitted to the jury, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." We have previously defined substantial evidence as "such relevant evidence as is necessary to persuade a rational juror to accept a conclusion." When ruling on a defendant's motion to dismiss, the trial court must review the evidence in the light most favorable to the state and determine whether the evidence is sufficient to get the case to the jury.
State v. Banks, __ N.C. App. __, __, 664 S.E.2d 355, 361 (2008) (quoting State v. Squires, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), cert. denied, 124 S. Ct. 2818, 159 L. Ed. 2d 252 (2004)) (emphasis added).
The sole indictment in this case charged defendant with "[m]urder" and properly set out the requisite elements of first degree murder. N.C. Gen. Stat. § 14-17 (2009) (First degree murder is committed when defendant perpetrates a "willful, deliberate, and premeditated killing."); N.C. Gen. Stat. § 15-144 (2009) ("[I]t is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law[.]"). Our Supreme Court has held that "an indictment for homicide . . . charges not only murder in the first degree but all lesser degrees of homicide, i.e., murder in the second degree, voluntary manslaughter, and involuntary manslaughter." State v. Camacho, 337 N.C. 224, 232, 446 S.E.2d 8, 12 (1994).
Defendant in this case moved to dismiss the charge of first degree murder at the close of the State's evidence, arguing before the trial court that there was no physical evidence to support Parker's testimony that defendant shot Lanier outside of defendant's trailer as Lanier was walking away.[1] Defendant made no argument concerning the insufficiency of the evidence to support a charge of voluntary manslaughter; therefore, defendant has not preserved this assignment of error. N.C.R. App. P. 10(b)(1) ("to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling party desired the court to make"); see State v. Neville, __ N.C. App. __, __, __ S.E.2d __, __ (Jan. 19, 2010) (COA09-412) (holding defendant charged with first degree murder was barred from arguing on appeal that the trial court erred in denying a motion to dismiss the charge of second degree murder where defendant only argued before the trial court that the charge of first degree murder should have been dismissed).[2] As will be discussed infra, defendant was afforded the opportunity to object to the jury instructions regarding voluntary manslaughter.

II. Jury Instructions
Defendant argues that the trial court committed plain error when it instructed the jury on the elements of voluntary manslaughter.[3] The trial court in this case instructed the jury that they could find defendant guilty of voluntary manslaughter if they found that defendant either: (1) killed Lanier in the heat of passion; or (2) exercised imperfect self defense by use of excessive force or by being the aggressor. Defendant now claims that there was insufficient evidence to support these instructions.
Defendant did not object to any portion of the instructions at trial. According to N.C. R. App. P. 10(b)(2), "[a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection[.]" Because defendant failed to object to any portion of the trial court's instruction on voluntary manslaughter, we review defendant's assignments of error under the plain error rule. In order to show plain error, defendant must demonstrate that any error was so "fundamental" that it caused "a miscarriage of justice[.]" State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted). Furthermore, defendant must "convince this Court . . . that absent the error, the jury probably would have reached a different result." State v. Reid, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994) (citation and quotation marks omitted).
"[V]oluntary manslaughter is [defined as] an intentional killing without premeditation, deliberation or malice but done in the heat of passion suddenly aroused by adequate provocation or in the exercise of imperfect self-defense where excessive force under the circumstances was used or where the defendant is the aggressor." State v. Wallace, 309 N.C. 141, 149, 305 S.E.2d 548, 553 (1983) (emphasis added). Where a defendant is charged with murder, as in the present case,
[i]t is the duty of the trial court to instruct the jury on the law applicable to the substantive features of the case arising on the evidence, and when there is evidence to support the lesser included offense of voluntary manslaughter, [the] defendant is entitled to have that offense submitted to the jury under proper instructions.
State v. Robbins, 309 N.C. 771, 776-77, 309 S.E.2d 188, 191 (1983) (citation omitted). A trial court is required to "submit lesser included offenses as possible verdicts, even in the absence of a request by the defendant, where sufficient evidence of the lesser offense is presented at trial." State v. Lowe, 150 N.C. App. 682, 686, 564 S.E.2d 313, 316 (2002). We must now determine if there was evidence to support the voluntary manslaughter instructions given by the trial court.

A. Heat of Passion
The trial court instructed the jury that they could find defendant guilty of voluntary manslaughter if it found that defendant acted in the heat of passion without malice. Defendant claims on appeal that there was no evidence of heat of passion to support the trial court's instruction. We disagree.
Voluntary manslaughter often occurs when the defendant acts in a heat of passion produced by legal provocation. Legal provocation exists when the victim's actions against the defendant rise to the level of an assault or threatened assault. The doctrine of heat of passion is "meant to reduce murder to manslaughter when defendant kills without premeditation and without malice, but rather under the influence of the heat of passion suddenly aroused which renders the mind temporarily incapable of cool reflection."
Camacho, 337 N.C. at 233, 446 S.E.2d at 13 (quoting State v. Forrest, 321 N.C. 186, 193, 362 S.E.2d 252, 256 (1987)) (internal citations omitted) (emphasis added). "If any evidence of heat of passion on sudden provocation exists, either in the State's evidence or that offered by the defendant, the trial court must submit the possible verdict of voluntary manslaughter to the jury. The determinative factor is the presence of such evidence." State v. Shoemaker, 334 N.C. 252, 270, 432 S.E.2d 314, 323 (1993).
The evidence at trial tended to show that Lanier knocked on defendant's door and requested entry. Defendant did not open the door and yelled for Lanier to "go the f___ on." Lanier then kicked in the door of defendant's trailer and entered. According to defendant, he immediately shot at Lanier without time for reflection. A jury may believe all, part, or none of the testimony of a witness at trial. State v. Foster, 293 N.C. 674, 682, 239 S.E.2d 449, 455 (1977), superceded by statute on other grounds as stated in State v. Davis, 305 N.C. 400, 423, 290 S.E.2d 574, 588 (1982). The jury in this case could have reasonably believed that defendant shot and killed Lanier upon legal provocation at the moment Lanier kicked in the door to defendant's trailer.
Our courts have previously held that an attack on the defendant by the victim is sufficient to establish evidence of heat of passion upon legal provocation. See Camacho, 337 N.C. at 2333-4, 446 S.E.2d at 13 (holding that "legal provocation" existed to support a voluntary manslaughter instruction were defendant beat victim to death with a hammer after victim assaulted defendant with a knife); State v. McConnaughey, 66 N.C. App. 92, 311 S.E.2d 26 (1984) (holding victim's charging at and wrestling with defendant was sufficient legal provocation to instruct the jury on voluntary manslaughter). We find that the violent nature of Lanier's entry into defendant's home was adequate provocation to inflame the passions of defendant, and, therefore, the instruction on heat of passion was appropriate.

B. Perfect Self-Defense and Defense of Habitation
The trial court in this case instructed the jury that if they found that defendant acted in perfect self-defense, he would not be guilty of any form of homicide. A person acts in perfect self-defense if:
(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.
State v. Lyons, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995) (quoting State v. McAvoy, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992)). "Perfect self-defense excuses a defendant altogether for a killing if all four elements above exist at the time of the killing." Id.
Similar to common law self-defense is the statutory defense of habitation. The trial court instructed the jury on defense of habitation pursuant to N.C. Gen. Stat. § 14-51.1 (2009), which states in pertinent part:
(a) A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.
(Emphasis added.)
"In enacting [this statute], the General Assembly broadened the defense of habitation to make the use of deadly force justifiable whether to prevent unlawful entry into the home or to terminate an unlawful entry by an intruder." State v. Blue, 356 N.C. 79, 89, 565 S.E.2d 133, 139 (2002). However, this Court has held that when a defensive killing is asserted, "[t]he reasonableness of defendant's action and of his belief that force was necessary presents a jury question to be resolved on the basis of the facts and circumstances surrounding the homicide." State v. Barrett, 20 N.C. App. 419, 423, 201 S.E.2d 553, 555-56, cert. denied, 285 N.C. 86, 203 S.E.2d 58 (1974). Whether this instruction was properly given is not at issue; however, we point out that the jury was instructed on the defense of habitation and it was the jury's responsibility to determine whether defendant aczted reasonably under the circumstances. Id.[4] The jury was, therefore, empowered to render a verdict of not guilty if it found that defendant reasonably defended his home. State v. Roberson, 90 N.C. App. 219, 223-24, 368 S.E.2d 3, 6 ("We hold . . . that the court properly instructed the jury to acquit the defendant if it should determine that defendant reasonably believed deadly force was necessary under the circumstances."), disc. review denied, 322 N.C. 484, 370 S.E.2d 237 (1988).

C. Imperfect Self-Defense
Defendant claimed that he killed Lanier to protect himself from injury or death; however, a jury may find a defendant guilty of voluntary manslaughter if the jurors determine that defendant acted in imperfect self-defense. Wallace, 309 N.C. at 149, 305 S.E.2d at 553. "Imperfect self-defense renders a defendant guilty of at least voluntary manslaughter if the first two elements [of perfect self-defense] exist at the time of the killing but the defendant, without murderous intent, either was the aggressor in bringing on the affray or used excessive force." Lyons, 340 N.C. at 661, 459 S.E.2d at 778 (emphasis added). One is the aggressor for purposes of imperfect self-defense "if he `aggressively and willingly enters into a fight without legal excuse or provocation.'" State v. Potter, 295 N.C. 126, 144, 244 S.E.2d 397, 409 (1978) (quoting Wynn, 278 N.C. at 519, 180 S.E.2d at 139). Excessive force is "more force than was reasonable under the circumstances[.]" State v. Potts, 334 N.C. 575, 581, 433 S.E.2d 736, 739 (1993). We hold that there was sufficient evidence to support a jury instruction regarding use of excessive force as a basis for a voluntary manslaughter conviction.
Defendant claimed that Lanier assaulted him in the past and threatened to kill defendant, or break his back, the day before the shooting. On 15 February 2008, Terry told defendant that Lanier was looking for him and defendant suspected that Lanier had broken a window in defendant's trailer the night before while he was staying at his mother's house. Defendant decided to borrow Terry's gun because he was afraid that Lanier would try to kill him or further injure his back. At the time of the shooting, defendant claims that Lanier broke down his front door and entered his trailer. The evidence at trial tended to show that Lanier was not armed when he entered defendant's trailer and defendant does not contend that he had reason to believe that Lanier was armed. Furthermore, the trajectory of the bullet lodged in defendant's chest wall indicated that defendant was shot in the back. Whether excessive force was, in fact, utilized was a question for the jury. See State v. Bell, 338 N.C. 363, 392, 450 S.E.2d 710, 726 (1994) ("Whether defendant in fact used excessive force is a question for the jury to determine based on the evidence."). Accordingly, we hold that there was sufficient evidence of excessive force to present the charge of voluntary manslaughter to the jury.
Finally, defendant argues that there was no evidence that he was the aggressor for purposes of a voluntary manslaughter conviction. We agree, but we do not find plain error under the circumstances. The trial court stated:
The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. However, if the State proves beyond a reasonable doubt that the defendant, though otherwise acting in self-defense, used excessive force or was the aggressor, though he had no murderous intent when he entered the fight, the defendant would be guilty of voluntary manslaughter.

(Emphasis added.) The trial court informed the jury that, "[i]f the defendant voluntarily and without provocation entered the fight, he would be considered the aggressor." There was no evidence presented at trial that defendant entered into a fight with Lanier without provocation. According to defendant's testimony, Lanier forcibly entered his trailer and defendant shot him out of fear for his life. According to Parker's testimony, defendant shot Lanier as he walked away from defendant.
"This Court has held that where the evidence does not indicate that the defendant was the aggressor, the trial court should not instruct on that element of self-defense." State v. Jenkins, __ N.C. App. __, __, __ S.E.2d __, __ (Feb. 2, 2010) (COA09-546) (holding defendant was entitled to a new trial where the trial court denied defendant's request to omit language pertaining to defendant being the aggressor where there was no evidence to support that portion of the proposed instructions). In State v. Ward, this Court held:
There is no evidence in the record that the defendant was the aggressor. Indeed, the defendant's evidence tends to show that the deceased was the aggressor up to the instant the defendant fired the fatal shot. Since the jury found the defendant guilty of manslaughter, it seems likely, under the circumstances in this case, that the jury believed the defendant acted in self-defense but used excessive force or that he, the defendant, was the aggressor.
26 N.C. App. 159, 163, 215 S.E.2d 394, 396-97 (1975). The Court found the instruction to be prejudicial. Id.
In the instant case, we find error in the trial court's instruction that the jury could find defendant guilty of voluntary manslaughter if the evidence established that defendant was the aggressor; however, we do not find plain error. Here, unlike in Ward, there was evidence of both heat of passion and imperfect self-defense through use of excessive force. Also, in this case, the trial court properly instructed the jury that the State carried the burden to prove that defendant did not act in self-defense. In Ward, the trial court improperly instructed the jury that "the burden was on the defendant to satisfy [the jury] that he was not the aggressor." Id. Furthermore, unlike in Jenkins, where defendant properly objected to the erroneous instruction, the standard in this case is plain error. Accordingly, we find error in the trial court's instruction but not plain error as we find it unlikely that a different outcome would have resulted had the error not occurred.

Conclusion
We hold that the trial court properly instructed the jury that it could find defendant guilty of voluntary manslaughter if it found that defendant killed Lanier in the heat of passion or used excessive force under the circumstances. We further hold that the trial court erred in instructing the jury that it could find defendant guilty if it found that defendant was the aggressor because there was no evidence to support such an instruction; however, we do not find that this error amounts to plain error.
No prejudicial error.
Judges BRYANT and JACKSON, concur.
Report per Rule 30(e).
NOTES
[1] On appeal, defendant admits in his brief that there was sufficient evidence to submit the charge of first degree murder to the jury.
[2] Defendant renewed his motion to dismiss at the close of all evidence presented. The only new argument made by defendant at that time was that all charges should be dismissed because the State's evidence established defense of habitation. Defendant's argument did not relate to the sufficiency of the evidence to support a voluntary manslaughter conviction.
[3] The State contends that defendant invited the error because he requested a voluntary manslaughter instruction; however we are unable to find this request in the record and the transcript citation provided by the State is not relevant to this issue.
[4] Imperfect defense of habitation has not been recognized in this State. See Lyons, 340 N.C. at 665, 459 S.E.2d at 780.