STATE v. ALLEN DILLS AND IDA DILLS.

(Filed 2 January, 1929.)

**1. Homicide—Evidence—Weight and Sufficiency.**

Where the evidence tends to show that the deceased, unarmed, came to the place where the defendants and others were fighting together, and in trying to pacify them he was turned upon by the defendants, and that the husband shot the deceased and killed him, while his wife joined in the assault with a stick, with further evidence of a previous encounter between the parties, and of motive: *Held*, the evidence that the assault on the deceased was a result of concerted agreement between the defendants, and that there was a preconceived purpose and joint assault was sufficient to take the case to the jury, and it was not error for the trial court to refuse to dismiss the action against the feme defendant.

**2. Homicide—Excusable or Justifiable Homicide—Defense of Others— Questions for Jury.**

Where the husband and his wife are tried for murder in the second degree, and there is evidence that he fired the fatal shot in self-defense while his wife assisted him, an instruction that she must satisfy the jury that she fought in her own defense is reversible error when there is evidence, and the feme defendant contends that she was engaged in defending her husband.

**3. Homicide—Excusable or Justifiable Homicide—Self-Defense—Duty to Retreat.**

Where the defendant on trial for homicide is without fault in bringing on the affray, and is assaulted with a pistol and is put in fear, and has reasonable grounds to fear, that his life will be taken or that great bodily harm would be inflicted and it reasonably appears to him to be

necessary to kill the deceased to save his own life or to protect himself from great bodily harm, he is not required as a matter of law either to retreat or to withdraw from the combat, and his killing the deceased under these circumstances is excusable on the principle of self-defense.

APPEAL by defendants from *Moore, J.,* at August Term, 1928, of MACON.

The defendants were convicted of murder in the second degree and from the judgment pronounced they appealed. New trial.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Moody & Moody and R. D. Sisk for defendants.*

ADAMS, J. The defendants, husband and wife, were indicted for the murder of Dave Waldroop but were not prosecuted for murder in the first degree. Their testimony in almost every essential element is diametrically opposed to that of the prosecution. The homicide occurred on 24 March, 1928. The defendants, their child, and Bill Shope, a brother of the female defendant, occupied a house situated on the side of a mountain, and in front of the house was a rugged road across which ran a branch a short distance lower down. About 125 feet up the mountain, on the same side of the road, was a house in which Mack Waldroop (a son of the deceased) and his wife lived, and about 300 feet farther up the road was another house occupied by the deceased and his other sons, Luther and Rufus. The record indicates that the men other than Shope were tenants of Ed Cruse, the Waldroops having recently moved to the land.

The State offered evidence tending to show that on the day of the homicide at 8 o'clock in the morning, Mack Waldroop heard Ida Dills "talking vicious" to his wife, "fulminating accompaniments agitating her rhetoric"; that she retired after aiming a loaded gun first at his wife then at him; that Allen Dills came to a side gate about thirty minutes afterwards flourishing an automatic pistol and menacing fatal injury, not only to Mack Waldroop and his wife, but to the deceased and his other sons who had recently appeared; that Allen went away apparently content with a threat to take Mack's life before 12 o'clock; that about this hour Mack drove his mules to the branch to water them; that as he passed Allen's house he was assaulted by the defendants and Bill Shope—by Allen with his "automatic" and by Ida with a club, Shope meantime holding Mack's shoulder and afterwards using a stick; that the deceased came up unarmed and tried to quiet the assailants, whereupon Allen Dills shot the deceased through the heart and caused his

instant death; that Allen then pointed his pistol at Mack and that Luther fired a shotgun at Allen and wounded him.

On the part of the defendants there was evidence tending to show that in the melee between Allen's wife and Mack's wife each had a gun; that the encounter between Allen and Mack at eight-thirty was a harmless "cuss-fight"; that Allen was going across the road for stovewood when he met Mack at 12 o'clock; that no assault was made on Mack; that the deceased was the aggressor, assaulting Allen with a pistol, and that Allen shot the deceased in self-defense.

It would clearly have been error to dismiss the action as to Ida Dills. There is ample evidence for a reasonable inference that the assault on Mack, immediately before the fatal shot, was the result of a concerted agreement between Shope and the defendants, and that the shot fired by Allen Dills was in legal effect the deed of all. *S. v. Bowman,* 152 N. C., 817; *S. v. Merrick,* 171 N. C., 788. It was testified that they turned Mack loose and made a joint assault upon the deceased the moment they saw him. There being evidence of a preconceived purpose and a joint assault it would have been an inadvertence to hold that Ida Dills was excusable merely because she did not actually compass the homicide. *S. v. Finley,* 118 N. C., 1162.

There was error, however, in the instructions given the jury. His Honor charged the following as the essential elements of self-defense: (1) The defendant must be free from fault, that is, he must not say or do anything for the purpose of provoking a difficulty, nor must he be disregardful in this respect of any wrongful word or act; (2) there must be a present impending peril to life or great bodily harm, either real or so apparent as to create the honest belief in the mind of the defendant that there is an existing necessity to take the life of the person intended to be killed at the time he attempts to take it or takes it; (3) there must be no convenient or reasonable mode of escape from the danger by retreat or by declining the combat.

It will be noted that the second and third clauses in substance embody the instruction that if the deceased was in the act of making such an assault upon the defendant, Allen Dills, as created in his mind a reasonable apprehension of impending peril to his life or of great bodily harm it was incumbent upon the defendant to show that there was no reasonable mode of escape from the danger by retreat or by declining the combat.

In *S. v. Clark,* 134 N. C., 698, after defining "felonious assault" as an assault made with murderous intent or with intent unlawfully to kill, the Court said: "Whether a felonious assault was being made or not, if the defendant, from the circumstances and surroundings as they then appeared to him, reasonably apprehended that the deceased was

assailing him with the intent to kill him or to do him great bodily harm, he had the right, if he was not himself already in fault, to stand his ground and defend himself, and, if necessary, to take the life of his assailant; and this would be true, though it afterwards appeared that the deceased did not in fact intend to commit a felonious assault. *S. v. Matthews,* 78 N. C., 523; *S. v. Barrett, supra,* and cases cited." *S. v. Blevins,* 138 N. C., 669; *S. v. Blackwell,* 162 N. C., 672, 683; *S. v. Johnson,* 166 N. C., 392; *S. v. Pollard,* 168 N. C., 116; *S. v. Bost,* 192 N. C., 1. If Dills was without fault and the deceased assaulted him with a pistol and by reason of such assault Dills actually apprehended and had reasonable grounds to apprehend that his life was in danger or that he was in danger of great bodily harm and that it was necessary or reasonably appeared to him to be necessary to kill the deceased to save his own life or to protect himself from great bodily harm he was not required as a matter of law either to retreat or to withdraw from the combat, and if under these circumstances, in the exercise of ordinary firmness, he shot and killed the deceased, the homicide would be excusable upon the principle of self-preservation. But to have the benefit of this doctrine he must show that he was free from blame and that he took life only when it was necessary or apparently necessary to save his own life or to protect himself from great bodily harm. As stated in *S. v. Blevins, supra,* it is otherwise in ordinary assaults, even with deadly weapons. In such cases a man is required to withdraw, if he can do so, and to retreat as far as may be consistent with his own safety, though as said in *S. v. Dixon,* 75 N. C., 275, 279, he may repel force by force and give blow for blow. *S. v. Kennedy,* 91 N. C., 572. In his charge the trial judge inadvertently confused these principles.

In reference to Ida Dills' participation the judge gave this instruction: "If she was aiding and abetting her husband who did use a deadly weapon, then if you find she was aiding and abetting her husband who admits he used a deadly weapon, then the burden would still be on her to satisfy you that she fought and did what she did in her own self-defense."

Allen Dills contended that he shot the deceased in self-defense and his wife contended that she was engaged in defending her husband. Whether she aided him in an unlawful assault or only in his lawful defense is a matter which should have been explained and submitted to the jury. *S. v. Cox,* 153 N. C., 638; *S. v. Greer,* 162 N. C., 640, 649; *S. v. Gaddy,* 166 N. C., 341.

For error in instructions there must be a

New trial.