The defendant was tried on an indictment in which she was charged with the murder of Furman E. Godwin. C. S., 4614, and C. S., 4642.
When the action was called for trial, the solicitor for the State announced to the court that he would not contend that on the evidence which he would offer for the State the defendant is guilty of murder in the first degree, but would contend that she is guilty of murder in the second degree or of manslaughter, as the jury should find the facts to be from all the evidence. The defendant entered a plea of not guilty; she relied on her plea of self-defense.
The evidence for the State tended to show that between 4 and 5 o'clock p.m., on 7 July, 1936, at her home in or near the town of Dunn in Harnett County, North Carolina, the defendant shot and killed the deceased, Furman E. Godwin; that the deceased was the husband of the defendant, and that she shot him with a pistol, when he came on the back porch of her home, within ten or fifteen minutes after she had returned to her home from a visit to the home of her parents; that on *Page 420 
several occasions shortly prior to the homicide the defendant had threatened to kill the deceased; and that the defendant as she was returning to her home on the day of the homicide had a pistol in her possession, which she exhibited to several persons, saying that she had the pistol for her protection.
After he was shot, the deceased went out of the porch into the yard of defendant's home, where he soon died of his wounds. There were at least three wounds on the body of the deceased, each caused by a pistol shot. The chief of police of the town of Dunn testified that when he went to the home of the defendant, immediately after the homicide, he found the body of the deceased lying on the ground in the back yard, with a pistol beside him, between his thumb and his elbow. The defendant was then in the house, lying on her bed. There were wounds on her body caused by pistol shots. She was under the care of a physician and on his advice was taken immediately to a hospital, where she remained for several weeks. An examination at the hospital disclosed that her wounds were superficial.
Mrs. J. C. Pope, a witness for the defendant, testified as follows: "I am the mother of Sina Pope Godwin. She came to my home the night before the homicide, and spent the night there. she frequently spent the night at my home. She left my home the next morning between 9 and 10 o'clock, and went to her home; she returned to my home, bringing with her a small suitcase, and some of her clothes. She remained at my home until after dinner. She and I left my home in her automobile about 3 o'clock p.m. We first drove to a filling station, where we got some gas. We then drove to the home of my son, Albert Pope. When we got there, his wife said to me that she was just fixing to go to my home. We told her that we would take her and her baby there in defendant's automobile. she got into the automobile with her baby, and we drove to the home of the defendant. When we drove into the yard there, the defendant got out of the automobile, saying: `I believe I will feed my biddies.' She went to the barn, and got a bucket of chicken feed; she fed her chickens; she caught a chicken and gave it to me; she then spoke to some boys who were plowing near her house; she did not have a pistol in her hand at this time; she did not have a pistol while we were together in the automobile.
"After she spoke to the boys, she went into the house. I could see her on the screened porch from the automobile in which I was sitting. She first went to the refrigerator on the porch and took the pan which was under the refrigerator to the sink and emptied it. While doing this, she spilled water from the pan on the floor of the porch. She got a broom and was sweeping up the water. While she was doing this, Furman Godwin drove up into the yard in his automobile. He got out *Page 421 
of the automobile and passed us as he went toward the house. He said to us, `Howdy.' We replied, `Howdy.' He looked like he was mad as fire. He went toward the steps leading to the back porch. When he was on the second step, he opened the screen door with his left hand, and put his right hand into his hip pocket. I cried out: `God save my child.' As soon as he got his pistol from his hind pocket, he began to fire at the defendant, who was then on the porch, which was enclosed by a screen. When he had fired at her two or three times, the defendant said: `Oh, Furman, please don't kill me.' They then ran together on the porch. He knocked her back against the pump. She reached over and got a pistol which was lying on the pump shelf. After that, they were both shooting. She ran out of the porch and as she came down the steps she dropped her pistol and cried out to me, `Oh, Ma, I'm killed; I'm killed.' The blood was flying from her hand. Furman then came out of the porch with a pistol in his hand. He went around the corner of the house, staggered, and fell to the ground — dead."
There was other evidence on behalf of the defendant tending to support her contention that she shot and killed the deceased in defense of her own life. This evidence was contradicted by evidence for the State, which tended to support the contention of the State that defendant is guilty of murder in the second degree, or, at least, of manslaughter.
In its charge, the court instructed the jury as follows:
"The law of North Carolina is that a person has a right to kill in self-defense. He may do so whenever it is necessary for him to do so to defend his own life or to protect himself from great bodily harm. He may do so when it is not actually necessary, if he believes it to be necessary and has a good ground for his belief. But the jury and not the defendant are the judges of whether the ground is reasonable.
"I further instruct you, gentlemen of the jury, that a prisoner cannot invoke the right of self-defense if there be opportunity to retreat and avoid the difficulty.
"Furthermore, a person claiming the right of self-defense, and exercising it, must do so in good faith and with reasonable firmness, and if more force is used than is necessary in the circumstances, the defendant would be guilty, at least, of manslaughter.
"I instruct you in this case, that if you find that the defendant was acting in self-defense, she must have done so in good faith and with reasonable firmness. If she used more force than was necessary under the circumstances, you, the jury, and not the defendant, being the judges of whether or not she used more force than was necessary, she would be guilty, at least, of manslaughter.
"There is another phase of this case to which I invite your attention. The defendant contends that they were fighting, and that she was *Page 422 
fighting to save herself; that her husband began the assault on her and that she replied. I further instruct you, gentlemen of the jury, that a person cannot invoke the claim or right of self-defense if he enters the fight willingly. That means voluntarily, aggressively, and without legal excuse, unless and until he abandons the combat and his adversary has notice that he has abandoned the conflict; and hence, in this case, if you find from the evidence that the prisoner, Sina Pope Godwin, entered the fight with her husband willingly, that is to say, aggressively and without legal excuse, she cannot claim or make the right of self-defense, or invoke the right of self-defense unless and until she abandoned the fight or combat, and that her husband, Furman Godwin, had notice that she had abandoned the fight or combat."
The defendant in apt time excepted to these instructions, and to the failure of the court to instruct the jury as required by C. S., 564. There was a verdict that defendant is guilty of murder in the second degree. The jury recommended the defendant to the mercy of the court.
It was ordered and adjudged by the court that the defendant be confined in the State's Prison for a term of not more than fifteen or less than ten years. The defendant appealed to the Supreme Court, assigning numerous errors in the trial.
Conceding without deciding that the instructions of the court to the jury at the trial of this action, which the defendant assigns as error on her appeal to this Court, are correct as general propositions of law, and are applicable to the facts as shown by the evidence for the State, we must hold that there was error in the failure of the court to instruct the jury as to the law applicable to the facts as shown by the evidence for the defendant. C. S., 564. If the facts with respect to the homicide are as shown by the evidence for the defendant, and the jury shall so find, the defendant was not required to retreat before she could invoke her right to kill her assailant in defense of her own life, or in protection of her own body from great harm. See S. v. Thornton, ante, 413. When an attack is made with a murderous intent, the person attacked is under no obligation to fly, but may stand his ground and kill his adversary, if need be. S. v. Glenn,198 N.C. 79, 150 S.E. 663. This principle is so well settled in the law of homicide in this State that no citation of authority in its support is necessary. See S. v. Bryson, 200 N.C. 50, 156 S.E. 143; S. v. Dills,196 N.C. 457, 146 S.E. 1; S. v. Gaddy, 166 N.C. 341, 81 S.E. 608;S. v. Blevins, 138 N.C. 668, 50 S.E. 763. *Page 423 
As the defendant is entitled to a new trial for error in the failure of the court to instruct the jury as required by the statute (C. S., 564), we shall not discuss other assignments of error on this appeal. These assignments of error tend to sustain the contention of the defendant that her conviction of murder in the second degree in this action was the result of the failure of the court to give her the protection of well settled principles of law at her trial.
The defendant is entitled to a new trial. It is so ordered.
New trial.