STATE OF NORTH CAROLINA v. EARL LEE WARD

No. 7529SC191

(Filed 4 June 1975)

1. **Homicide § 28— self-defense — instructions — right to stand ground**
    The trial court in a homicide case erred in failing to instruct the jury that defendant had no duty to retreat but could stand his ground and shoot his assailant in self-defense if he had a reasonable belief that he was about to be killed or suffer great bodily injury where defendant's evidence tended to show that during the evening of his death deceased had been carrying a .32 caliber pistol in his back pocket, deceased pointed the gun at defendant on several occasions and threatened to kill him, deceased hit defendant over the head with the pistol on one occasion, defendant followed deceased into a bedroom after being told by deceased that he could sleep there, when he entered the bedroom deceased said, "I will blow your brains out" and reached into his back pocket, and defendant thereupon shot deceased.

2. **Homicide § 28— self-defense — instructions — aggressor or excessive force**

> The trial court in a homicide case erred in instructing the jury that the burden was on defendant to satisfy it that he was not the aggressor and that he would be guilty of manslaughter if he was the aggressor or used excessive force in repelling an assault though he was otherwise acting in self-defense where there was no evidence in the record that defendant was the aggressor.

ON *certiorari* to review the trial of defendant before *Rouse, Judge*. Judgment entered 19 December 1973 in Superior Court, McDOWELL County. Heard in the Court of Appeals 7 May 1975.

This is a criminal prosecution wherein the defendant, Earl Lee Ward, was charged in a bill of indictment, proper in form, with first degree murder. Immediately prior to arraignment, however, the State announced that it had elected not to prosecute the defendant for first degree murder but that it would prosecute him "on the charge of second degree murder or manslaughter, as the evidence might warrant."

Defendant entered a plea of not guilty and the State offered evidence tending to show the following: In the early morning hours of 6 March 1972, Wayne Morrow, Rex Lewis, Clifford Anderson, Joel Lewis, and the defendant had occasion to be in a mobile home located on Stacy Hill Road in McDowell County. Morrow had been living in the mobile home for approximately two months. Shortly after 1:00 a.m., Morrow announced that he was going to bed. On the way to his bedroom, he and the defendant had a brief argument. Morrow then went into the bedroom and began to prepare for bed. Several minutes later, the defendant went to the bedroom and asked Morrow "where he [the defendant] was going to sleep." Morrow replied that the defendant would have to make his "own damn arrangements". Clifford Anderson thereupon offered to take the defendant home, but the defendant responded, " . . . I ain't going nowhere. This is my place." Shortly thereafter, Anderson heard a gunshot. He ran to the bedroom and saw the defendant with a gun in his hand. The gun was pointed at Morrow, and he heard Morrow say to the defendant, "Barney . . . you have done it, you have shot me." Anderson, Rex Lewis, and the defendant carried Morrow into the living room, and Anderson called an ambulance. Several minutes later David Sigmon, a deputy sheriff of McDowell County, arrived at the trailer. Sigmon entered the mobile home and saw Morrow lying on the living room

floor. When he was unable to receive any response from Morrow, he looked at Rex Lewis and Clifford Anderson and asked, "What happened?" The defendant responded, "I shot him." Sigmon thereupon asked where the gun was and the defendant pointed to a .25 caliber pistol lying on a bar which separated the living room and the kitchen. Mack Autrey, a deputy sheriff of Mc-Dowell County, later discovered a .32 caliber revolver under the mattress of the bed in the bedroom in which Morrow was shot. Morrow died as a result of the gunshot wound.

The defendant offered evidence tending to show that he owned the mobile home and that he had given Morrow permission to stay there for several weeks. Morrow had no particular bedroom in the trailer. On the night of 5 March 1972, Morrow had been carrying a .32 caliber pistol in his right rear pocket, had pointed the pistol at the defendant on several occasions and had threatened to kill him. Morrow had also hit the defendant over the back of the head with the pistol. When Morrow began to go to bed, he and the defendant had a brief argument. Morrow finally said, "Go ahead and sleep with me", and the defendant went into the bedroom. As soon as the defendant entered the room, Morrow said, "I will blow your brains out", and reached into his back pocket. Thinking that Morrow was reaching for his pistol and was going to kill him, the defendant shot Morrow in self-defense.

The jury found the defendant guilty of voluntary manslaughter. From a judgment imposing a prison sentence of not less than twelve (12) nor more than eighteen (18) years, defendant appealed.

*Attorney General Rufus Edmisten by Assistant Attorney T. Buie Costen for the State.*

*Story, Hunter & Goldsmith, P.A., by C. Frank Goldsmith, Jr., for defendant appellant.*

HEDRICK, Judge.

[1] Based on exceptions duly noted in the record, the defendant contends that the trial court failed to declare and explain the law arising on the evidence with respect to a substantial feature of his claim of self-defense. The defendant argues that under the evidence of this case it was the duty of the court to instruct the jury that the defendant was under no duty to retreat

but could stand his ground and kill Morrow if necessary to save his life or protect his person from great bodily harm.

It is well-settled that where a man is without fault and a murderous assault is made upon him—an assault with intent to kill—he is not required to retreat, but may stand his ground and kill his assailant if necessary to save his own life or protect his person from great bodily harm. *State v. Washington,* 234 N.C. 531, 67 S.E. 2d 498 (1951) ; *State v. Bryant,* 213 N.C. 752, 197 S.E. 530 (1938). It is likewise well-settled that this necessity may be real or apparent. *State v. Washington, supra; State v. Terrell,* 212 N.C. 145, 193 S.E. 161 (1937). The determinative question is whether upon the facts and circumstances as they appeared to the defendant at the time a man of ordinary firmness would regard the necessity as real, and this question is generally to be decided by the jury. *State v. Washington, supra; State v. Ellerbe,* 223 N.C. 770, 28 S.E. 2d 519 (1944) ; *State v. Marshall,* 208 N.C. 127, 179 S.E. 427 (1935).

In the present case, the defendant's evidence tended to show that during the evening the deceased had been carrying a .32 caliber pistol in his back pocket; that on several occasions the deceased had pulled the gun out of his pocket, pointed it at the defendant and had threatened to kill him, and that on one occasion the deceased had hit the defendant over the head with the pistol. The evidence also tended to show that the defendant followed the deceased into the bedroom after being told by the deceased that he could sleep there, that when he entered the bedroom the deceased said, "I will blow your brains out" and reached into his back pocket, and that the defendant thereupon shot the deceased.

Yet, nowhere in his charge did the judge instruct the jury that the defendant, if he had a reasonable belief that he was about to be killed or suffer great bodily injury, he had no duty to retreat but could stand and shoot his assailant in self-defense. Since this was a substantial feature of defendant's defense, it was error for the court not to instruct the jury on this aspect of the case, even in the absence of a special request therefor. *State v. Miller,* 267 N.C. 409, 148 S.E. 2d 279 (1966) ; *State v. Washington, supra; State v. Godwin,* 211 N.C. 419, 190 S.E. 761 (1937) ; *State v. Thornton,* 211 N.C. 413, 190 S.E. 758 (1937).

[2] Additionally, the defendant contends the court erred to his prejudice when it instructed the jury with respect to self-

Andrews v. Insurance Co.

defense that the burden was on the defendant to satisfy it that he was not the aggressor and that if the jury believed that he was the aggressor or used excessive force in repelling an assault, though it found he was otherwise acting in self-defense, he would be guilty of manslaughter. We agree. There is no evidence in the record that the defendant was the aggressor. Indeed, the defendant's evidence tends to show that the deceased was the aggressor up to the instant the defendant fired the fatal shot. Since the jury found the defendant guilty of manslaughter, it seems likely, under the circumstances in this case, that the jury believed the defendant acted in self-defense but used excessive force or that he, the defendant, was the aggressor. We cannot assume that the jury was more discriminating than the judge and ignored the erroneous instruction while applying the correct one. Thus, the error in giving the instruction complained of was prejudicial.

Defendant has other assignments of error which we need not discuss since they are not likely to occur upon retrial.

For errors in the charge, there must be a

New trial.

Chief Judge Brock and Judge Morris concur.