STATE v. VAUGHN

[227 N.C. App. 198 (2013)]

STATE OF NORTH CAROLINA
v.
KEISHA MALARIAN VAUGHN

No. COA12-1179

Filed 7 May 2013

**Criminal Law—self-defense—instruction on defendant as aggressor—not supported by evidence**

There was plain error in a prosecution for assault with a deadly weapon with intent to kill, inflicting serious injury where there was a stabbing in a night club parking lot, defendant claimed self-defense, and the judge instructed the jury that defendant was not entitled to the benefit of self-defense if she was the aggressor in the altercation. The undisputed evidence showed that the victim lunged at defendant before she was able to initiate any action and was not sufficient to support the instruction.

Appeal by Defendant from Judgment entered 12 March 2012 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 11 March 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Susannah P. Holloway, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

From 5 to 7 March 2012, Keisha Malarian Vaughn ("Defendant") was tried on charges of assault with a deadly weapon with intent to kill, inflicting serious injury. The evidence presented at trial tended to show the following:

On the night of 18 April 2009, Defendant and her friend Latisha Shea Kenney ("Kenney") attended the Music City nightclub ("Music City"), located at 7700 Boeing Drive in Greensboro, with Kenney's romantic interest, Shawn Pressley ("Pressley"). Kenney and Pressley arrived first, in Pressley's car. Though the car belonged to Pressley, Kenney held the

keys for the majority of the night. Shortly after Defendant arrived, the three of them entered the nightclub.

Once inside, Pressley went to find his friends and Kenney and Defendant went to find a table. Later that night, around 2:00 a.m., Pressley approached Kenney and Defendant on the dance floor. Kenney was visibly upset by the interaction and wanted to leave the nightclub. Kenney left with Defendant, and they went to a nearby gas station so that Defendant could fill her car's fuel tank. Afterward, they headed back to Music City so that Kenney could return Pressley's keys. As they arrived, Defendant backed her car into the space immediately to the right of Pressley's vehicle, which was also backed in, so that the driver's side of her car was closest to the passenger side of his car. Kenney was in the passenger seat of Defendant's car.

Kenney and Defendant waited in Defendant's car until Pressley came out of Music City. When that occurred, Pressley forced open the passenger-side door and confronted Kenney. They began to argue about a number of things, including Pressley's car keys, Kenney's decision to leave the nightclub, and Pressley's inability to get in touch with her. When Kenney attempted to elicit a confirmation from Defendant that she had not heard Pressley's attempts to call her, Pressley focused his anger on Defendant. The two began arguing and Pressley directed Defendant to get out of the car, referring to her as a "lesbian" in the process. Defendant exited her car "hoping to, you know, diffuse the situation, clear my name, and I wanted to re[-]ask the question, like, why would you even think that that about me? So I got out of the car hoping to do that."

According to Defendant, the argument turned physical within a matter of seconds. Pressley began to beat her with his fists and then picked her up and body slammed her into the pavement. As she was being dropped, Defendant gripped Pressley's dreadlocks "to kind of break the fall and not hit the ground so hard[.]" At some point, Defendant lost one of her contacts. While Pressley was attacking Defendant, Kenney got out of the passenger seat, rounded the front of Defendant's car, and pulled Pressley off of her. Pressley then resumed his original argument with Kenney, escalating matters by pushing her. After a brief period of time, Kenney began to hear air coming out of Pressley's tires. She informed him of this and he "pushed [her] a little bit harder." At that point, Kenney walked away while continuing her argument with Pressley, who had begun shoving her around the Music City parking lot.

While this was occurring, Defendant got back into her car to examine the injuries inflicted by Pressley. When she saw the swelling and gashes on her face, she became angry "that he had beat me that bad[ly] for no reason." Aware that Kenney and Pressley had experienced instances of domestic violence in the past, upset, and concerned for Kenney's safety, Defendant equipped herself with a knife and exited the car. At trial, Defendant testified that she left the safety of her car because she "wanted to make sure [Kenney] was okay. I had seen my face and I was just thinking, wow, he hurt me this bad[ly] for no reason. Imagine what he might do to [Kenney.] I didn't want to leave her out there."

Unable to see clearly without her second contact, Defendant could not spot Kenney. Almost immediately, however, Defendant perceived Pressley charging toward her "like a bull" from the front of his vehicle. Defendant testified that there was no time to run, so "I just kind of tensed up and tried to protect my face and blindly swung the knife, and then [Pressley] turned and punched me several other times, and I fell back down." In that moment, Defendant stabbed Pressley in the chest and pierced his heart. Pressley then punched Defendant, at least twice more, and she fell down to the ground. Worried that Pressley would "get away with what he had just [done] to [her]," Defendant cut his tires and crawled back to her car. An unidentified bystander took the knife and told Defendant to leave the scene. She did, driving to a nearby McDonald's to meet with a friend. From there, she was convinced to go to the hospital and seek treatment for her injuries. Defendant saw the police for the first time when she arrived at the hospital.

That same night, officers R.R. Neal, Jr., ("Neal") and Adam Deal of the Greensboro Police Department ("GPD") were at Music City responding to an unrelated matter. When that disturbance was over, they noticed a confrontation in the parking lot and a gathering crowd. As they approached the scene, the crowd began to disperse and Neal noticed Pressley leaning over, next to his car, with his hands on his knees. Neal asked Pressley whether he was okay, and Pressley responded that he was not, indicating that he had been stabbed. At that point, Neal noticed a dime-sized hole in Pressley's chest and called EMS to the scene. While waiting for EMS, Pressley became less responsive and stopped speaking. Pressley was still alive at the time of the trial, but had suffered an anoxic brain injury resulting from lack of oxygen to the brain. His mother testified that he was nonresponsive, required full-time care, and lived with her in her apartment.

Defendant was treated at the hospital and has not sustained any permanent physical disability. Afterward, she gave a voluntary statement to GPD. Defendant's injuries were documented at the police station, and

she was interviewed by Detective Mike Matthews ("Matthews"), who was the lead investigator on the case. During the interview, Defendant indicated to Matthews that she chose to exit her car the second time — *i.e.*, immediately before Pressley charged at her like a bull — at least in part because she was upset about her injuries. She also admitted that she should have left the scene instead of exiting her car.

At the end of the trial, the jury was instructed on the doctrine of self-defense, including the rule that self-defense is justified only if the defendant is not the aggressor. No objection was raised to this instruction at trial. Defendant was found guilty of the offense of assault with a deadly weapon inflicting serious injury on 7 March 2012.[1] She was sentenced to a minimum of 25 months and a maximum of 39 months in prison. Defendant was also ordered to pay a total of $2,944.73 in costs and restitution. Defendant appeals.

### Standard of Review

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), *cert. denied*, 555 U.S. 835, 172 L. Ed. 2d 58 (2008). The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted). "Under the plain error rule, [the] defendant must convince [the appellate court] not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

### Discussion

On appeal, Defendant contends that the trial court committed plain error by instructing the jury that she was not entitled to the benefit of

---

1. This is a lesser-included offense of the charge of assault with a deadly weapon, inflicting serious injury, with the intent to kill.

self-defense if she was the aggressor in her altercation with Pressley because "no evidence suggested that [she] was the aggressor." We agree.

This Court has repeatedly held that "where the evidence does not indicate that the defendant was the aggressor, the trial court should not instruct on that element of self-defense." *State v. Jenkins*, 202 N.C. App. 291, 297, 688 S.E.2d 101, 105 (2010) (awarding a new trial after the defendant was tackled to the floor by the victim, pushed the victim away, and shot the victim with a gun he kept on a nearby nightstand before the victim was able to attack again). Our Supreme Court has also directed that "[w]here jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). Broadly speaking, the defendant can be considered the aggressor when she "aggressively and willingly enters into a fight without legal excuse or provocation." *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971).

In support of her contention that the evidence was inadequate to support an instruction on the aggressor element of self-defense, Defendant compares this case to *State v. Tann*, 57 N.C. App. 527, 291 S.E.2d 824 (1982). In *Tann*, the defendant and victim were second cousins. *Id.* at 527, 291 S.E.2d at 825. On at least two prior occasions, the victim had threatened to do harm to the defendant. *Id.* at 527–28, 291 S.E.2d at 825. One evening at a convenience store, the victim grabbed the defendant and began arguing with him. *Id.* They struggled and the defendant pushed the victim back before shooting him twice with a pistol, seriously injuring him. *Id.* Despite the fact that the defendant had armed himself in anticipation of the confrontation, we determined that "[t]here [was] no conflict of evidence as to which of the parties was the aggressor. [The d]efendant did not start the fight." *Id.* at 530, 291 S.E.2d at 827. While the defendant was entitled to an instruction on self-defense, we reasoned that he was "prejudiced by the further instruction that he could not avail himself of the doctrine of self-defense if he . . . was the aggressor." *Id.* at 531, 291 S.E.2d at 827 (citation, quotation marks, and emphasis omitted). Accordingly, we held that the trial court erred in its instruction and awarded a new trial. *Id.* at 531–32, 291 S.E.2d at 827; *see also State v. Ward*, 26 N.C. App. 159, 215 S.E.2d 394 (1975) (awarding a new trial on grounds that the trial court prejudicially erred by instructing on the aggressor doctrine when the defendant shot and killed the victim — who regularly carried a pistol in his rear pocket, had often threatened to kill the defendant with it, had recently assaulted the defendant, and, before being shot, threatened to blow the defendant's brains out while reaching for his back pocket).

We also find instructive an opinion of our Supreme Court in the case of *State v. Washington*, 234 N.C. 531, 67 S.E.2d 498 (1951). There the defendant-wife was charged with murdering her husband of five years. *Id.* at 532, 67 S.E.2d at 499. The husband had assaulted the wife in the past and had an altercation with her sister the day before he was killed. *Id.* at 533, 67 S.E.2d at 499. That morning, after being released from police custody, he returned to the house and attempted to drag the wife outside. *Id.* He was unsuccessful, but reappeared a few hours later and asked the wife for some money to pay for breakfast. *Id.* Leaving him outside, the wife went back into the house to retrieve the money and equip herself with a knife. *Id.* When she returned to the front door, the husband "pulled her out by the wrist, dragged her off the porch, down the street, knocked her over an embankment, jumped down on top of her and beat her with his fists," at which point she "nicked" him with the knife. *Id.* The husband then picked up a large stick, struck her several times, dragged her up the embankment, continued to beat her, and threatened her. *Id.* at 533, 67 S.E.2d at 499–500. The wife then "stabbed him in the chest to get loose because, as she put it, 'he told me what he was going to do to me and I knowed what would happen.' " *Id.* On those facts, our Supreme Court awarded a new trial and determined, in pertinent part, that "the record here discloses no evidence tending to show that the defendant brought on the difficulty or was the aggressor," and, thus, the trial court's instruction regarding the aggressor doctrine "was partially inapplicable, incomplete and misleading [to the jury]." *Id.* at 535, 67 S.E.2d at 501.

The State contends that these cases are not applicable primarily because of the "salient fact that [Defendant] was sitting in the safety of her car when she decided to get her knife, fold open the blade, get out of her car, and confront the victim, who was holding nothing but keys." In addition, the State cites "evidence . . . that the defendant acted out of vengefulness [because she] herself stated that she was angry that [Pressley] had hurt her so badly in the first attack[.]" We are unpersuaded.

Defendant's decision to arm herself and leave the vehicle, while perhaps unwise, was not, in and of itself, evidence that she brought on the difficulty, "aggressively and willingly" entered the fight, or intended to continue the altercation. There is no evidence that Defendant believed Pressley was still near her car or that she was preparing to continue the confrontation. Indeed, the evidence shows that Pressley appeared to be (and, for a time, was) in a separate altercation with Kenney — not that he was waiting for Defendant to come back out of her car and fight with him. Defendant knew that Pressley and Kenney had suffered bouts of

domestic violence and had reason to believe that Kenney was in danger and that Defendant would be in danger if she left the car. Given this context, the fact that Defendant was upset about her injuries, even though she decided to leave the safety of the vehicle, is not evidence that she was the aggressor.

In both *Tann* and *Washington*, the respective defendants armed themselves in anticipation of a potential confrontation with their assailants. We determined in *Tann* that, despite the defendant's "fail[ure] to avoid the fight," there was no evidence that he was the aggressor when he shot the victim in a convenience store. *Tann*, 57 N.C. App. at 531, 291 S.E.2d at 827 (emphasis added). In *Washington*, the wife — who was aware of her husband's aggressive tendencies and recent assaults — opened the door of her home, thereby allowing the confrontation to occur. *Washington*, 234 N.C. at 533, 67 S.E.2d at 499. Yet, despite the fact that the wife had armed herself before giving her husband money for breakfast and even though she opened the door, our Supreme Court found no evidence that she was the aggressor. *Id.* at 535, 67 S.E.2d at 501.

Thus, in accordance with the opinions of this Court and our Supreme Court, we hold that the evidence presented at trial was insufficient to support the instruction that Defendant would lose the benefit of self-defense if she were the aggressor. The undisputed evidence shows that Pressley lunged at Defendant before she was able to initiate any action. Therefore, because it cannot be assumed "that the jury was more discriminating than the judge and ignored the erroneous instruction while applying the correct one," *see Ward*, 26 N.C. App. at 163, 215 S.E.2d at 396–97, we hold that the court's error was prejudicial and award a new trial.

NEW TRIAL.

Judges MARTIN and HUNTER, ROBERT C., concur.