IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-481

 Filed: 6 February 2018

Swain County, No. 11 CRS 50950

STATE OF NORTH CAROLINA

 v.

WILLOUGHBY HENEREY MUMMA

 Appeal by defendant from judgment entered 10 June 2016 by Judge Marvin P.

Pope, Jr., in Swain County Superior Court. Heard in the Court of Appeals 31 October

2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Sherri H.
 Lawrence, for the State.

 Meghan Adelle Jones for defendant-appellant.

 BRYANT, Judge.

 Where there was sufficient evidence presented at trial that defendant was the

aggressor, the trial court did not err in instructing the jury on the aggressor doctrine.

Assuming arguendo the trial court erred in allowing the jury to review photographs

of the deceased victim during jury deliberations over defendant’s objection, this error

was harmless where defendant has not established that he was prejudiced thereby.

Lastly, where the prosecutor’s closing argument was not so grossly improper as to

render defendant’s trial and conviction fundamentally unfair, the trial court did not
 STATE V. MUMMA

 Opinion of the Court

err when it declined to intervene ex mero motu during the prosecutor’s closing

argument, and we find no prejudicial error in the judgment of the trial court.

 On 9 November 2011, defendant Willoughby Mumma was with his wife Amy

Chapman at their home in Bryson City, North Carolina. Amy’s twenty-year-old son,

Christopher Robinson, who lived with Amy and defendant, came home around 5:30

p.m. that evening where he encountered defendant and Amy, drinking and taking

pills.

 At around 8:00 p.m., Amy drove to a store where she purchased six alcoholic

beverages. She returned home within twenty to twenty-five minutes.

 While Amy was gone, defendant and his friend, Dewayne Bradley, had the

following conversation via text message:

 8:11 p.m., defendant: “I’m goin 2 kil her.”
 8:11 p.m., defendant: “I’m goin 2 kil her.”
 8:12 p.m., Bradley: “Please don’t.”
 8:13 p.m., defendant: “Im going 2 I cant take.”
 8:13 p.m., Bradley: “Man just walk down the road.”
 8:13 p.m., defendant: “Do you have ne lime?”
 8:14 p.m., Bradley: “Noooooo, just chill.”
 8:15 p.m., defendant: “No im over it I can’t take no more I
 luv u bro.”
 8:16 p.m., Bradley: “Please lessen to me”
 8:17 p.m., defendant: “Im sorry I have 2”
 8:20 p.m., Bradley: “Man ill come and get 2morr, my word”
 8:21 p.m., defendant: “Line will get rid of the body”

 -2-
 STATE V. MUMMA

 Opinion of the Court

 Around 9:45 p.m., defendant and Amy began arguing over an alarm clock radio.

Robinson went into the bedroom and told them to stop arguing. According to

defendant, Amy was intoxicated and “got meaner as the night went on.”

 At 11:16 p.m., defendant called Bradley multiple times and repeatedly called

Bradley into the early morning hours of 10 November 2011. At 11:52 p.m., defendant

texted Bradley duplicate text messages stating, “I need u 2 call me now GD.”

 At 9:30 a.m. the next morning, Robinson woke up and walked past defendant

sitting on the couch in the living room, texting on his cell phone. Robinson went into

the bedroom to look for Amy and get a cigarette. Robinson saw blankets all over the

bedroom floor and a quarter-sized spot of blood on the bed. Robinson initially thought

Amy may have hit defendant; she would get angry when she drank, and he had seen

Amy hit defendant before. Defendant told Robinson to get out of the room. Robinson

asked where Amy was, and defendant told him she was at work. Defendant was

pacing back and forth from the living room to the kitchen, acting “like things [were

not] right.”

 Defendant told Robinson to get ready for school. Bradley and his wife arrived

to pick up Robinson for school. Bradley went into the house while Robinson got in

the car. Defendant showed Bradley Amy’s body on the closet floor. Bradley left

immediately, got in his car, and told his wife and Robinson to lock the car doors.

Defendant tried to get in the car with them, but Bradley ordered him out of the car.

 -3-
 STATE V. MUMMA

 Opinion of the Court

As they drove away, defendant ran into the woods. Bradley told Robinson that his

mother was dead. He pulled into a driveway down the street, called 911, and waited

for the police to arrive.

 Law enforcement responded to the 911 call and discovered Amy’s body in the

bedroom closet. At some point later that day, Jennifer Jones, Bradley’s ex-girlfriend,

sent defendant a text asking, “What did you do?” Defendant responded, “I kild her.”

Law enforcement officers located defendant down the road from the residence in a

field containing briars, weeds, and tall grasses. He was taken into custody at 5:18

p.m. with scratches on his arms and legs.

 When law enforcement interviewed defendant later that day, defendant stated

that both he and Amy were drug addicts and that on the night of 9 November 2011,

they had been drinking and had also taken about thirty Klonopin pills each.

Defendant stated that Amy tried to stab him with his pocketknife, at which point he

took the knife from her, pushed her to the floor, sat on top of her, and stabbed her in

the neck because she bit him. He stabbed her in the eye when she tried to scream for

Robinson to help her. The knife blade broke off in her eye. Defendant stated that he

“blacked out,” “freaked out,” and “killed her.” Later, at trial, defendant would testify

that he “had to end that fight. She was trying to get the knife back.”

 On 11 November 2011, Dr. Sam Davis, a pathologist at Harris Regional

Hospital, performed an autopsy on Amy’s body. Dr. Davis opined that the cause of

 -4-
 STATE V. MUMMA

 Opinion of the Court

death was “exsanguination, or bleeding to death” “due to stab wounds on her neck

and eye.” Amy had one stab wound in the upper right eyelid, perforating the eyeball,

one stab wound in the left anterior neck, and two stab wounds to the anterior right

neck, with one wound perforating the external jugular vein. Dr. Davis testified at

trial about defensive wounds on the backs of her hands as “a textbook appearance of

being stuck in a defensive posture. . . . [S]he was not striking, but rather [was] being

struck.”

 On 22 November 2011, defendant was indicted for first-degree murder.

Defendant filed a “Notice of Defenses” for accident, diminished capacity, and

voluntary intoxication, and later amended his notice to include only diminished

capacity and voluntary intoxication. Thereafter, defendant filed a “3rd Amended

Notice of Defenses” for self-defense and voluntary intoxication.

 The case came on for trial during the 23 May 2015 session of Swain County

Superior Court, the Honorable Marvin P. Pope, Jr., Judge presiding. The jury

returned a verdict of guilty of second-degree murder, and the trial court entered

judgment and imposed a sentence of 180 to 225 months imprisonment. Defendant

appeals.

 _________________________________________________________

 On appeal, defendant contends the trial court (I) violated a statutory mandate

or committed plain error by giving erroneous jury instructions on self-defense; (II)

 -5-
 STATE V. MUMMA

 Opinion of the Court

erred by sending inflammatory photographs of the decedent’s body to the jury

deliberation room; and (III) erred by failing to intervene and stop the prosecutor from

making improper closing arguments.

 I

 Defendant first argues that the trial court erroneously instructed the jury on

self-defense when all the evidence showed that Amy was the aggressor. Defendant

also contends that this issue is “preserved for review as a matter of law,” despite his

failure to object to the jury charge at trial. We disagree and review for plain error.

See State v. Juarez, 369 N.C. 351, 357–58, 794 S.E.2d 293, 299–300 (2016) (reviewing

for plain error the defendant’s challenge to the trial court’s jury instruction on the

aggressor doctrine of self-defense where the defendant did not object to the

instruction as given at trial).

 Rule 10 the North Carolina Rules of Appellate Procedure provide that “[a]

party may not make any portion of the jury charge or omission therefrom the basis of

an issue presented on appeal unless the party objects thereto before the jury retires

to consider its verdict, stating distinctly that to which objection is made and the

grounds of the objection . . . .” N.C. R. App. P. 10(a)(2) (2017). “For error to constitute

plain error, a defendant must demonstrate that a fundamental error occurred at

trial.” State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation

omitted). “To show that an error was fundamental, a defendant must establish

 -6-
 STATE V. MUMMA

 Opinion of the Court

prejudice that, after examination of the entire record, the error ‘had a probable impact

on the jury’s finding that the defendant was guilty.’ ” Id. (citation omitted) (quoting

State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

 “An individual is the aggressor if he ‘aggressively and willingly enters into a

fight without legal excuse or provocation.’ ” State v. Effler, 207 N.C. App. 91, 97, 698

S.E.2d 547, 551 (2010) (quoting State v. Potter, 295 N.C. 126, 144, 244 S.E.2d 397,

409 (1978)). “It is undisputed that ‘[a] person is entitled under the law of self-defense

to harm another only if he is “without fault in provoking, engaging in, or continuing

a difficulty with another.” ’ ” Id. at 98, 698 S.E.2d at 552 (quoting State v. Stone, 104

N.C. App. 448, 451–52, 409 S.E.2d 719, 721 (1991)). “This Court has repeatedly held

that ‘where the evidence does not indicate that the defendant was the aggressor, the

trial court should not instruct on that element of self-defense.” State v. Vaughn, 227

N.C. App. 198, 202, 742 S.E.2d 276, 278 (2013) (quoting State v. Jenkins, 202 N.C.

App. 291, 297, 688 S.E.2d 101, 105 (2010)).

 “[T]he judge has the duty to instruct the jury on the law arising from all the

evidence presented.” State v. Smith, 360 N.C. 341, 346, 626 S.E.2d 258, 261 (2006)

(quoting State v. Moore, 75 N.C. App. 543, 546, 331 S.E.2d 251, 253 (1985)). “In

instructing the jury with respect to a defense to a criminal charge, ‘the facts must be

interpreted in the light most favorable to the defendant.” State v. Holloman, 369 N.C.

615, 625, 799 S.E.2d 824, 831 (2017) (quoting State v. Montague, 298 N.C. 752, 755,

 -7-
 STATE V. MUMMA

 Opinion of the Court

259 S.E.2d 899, 902 (1979)). It is considered error to charge the jury on the aggressor

doctrine where “the record . . . discloses no evidence tending to show that the

defendant brought on the difficulty or was the aggressor[.]” Vaughn, 227 N.C. App.

at 203, 742 S.E.2d at 279 (emphasis added) (quoting State v. Washington, 234 N.C.

531, 535, 67 S.E.2d 498, 501 (1951)).

 In the instant case, defendant challenges the following portion of the jury

instructions:

 If the defendant voluntarily and without provocation
 entered the fight, the defendant could be considered the
 aggressor, unless the defendant thereafter attempted to
 abandon the fight. . . .

 ....

 The defendant is not entitled to the benefit of self-defense
 if the defendant was the aggressor with the intent to kill or
 inflict serious bodily harm upon the deceased.

 Contrary to defendant’s assertion otherwise and far from “no evidence,” see id.

(citation omitted), there was sufficient evidence presented at trial that defendant was

the aggressor. For example, a DVD recording of defendant’s 10 November 2011

interview with law enforcement officers was played for the jury in which he described

how Amy came at him with the knife, he took the knife away from her, and proceeded

to get on top of her and stab her in the neck and then in the eye to keep her from

screaming for help. Based on this account to law enforcement, defendant became the

aggressor after he gained control of the knife and then proceeded to get on top of Amy

 -8-
 STATE V. MUMMA

 Opinion of the Court

and stab her. Even though the jury also heard evidence—defendant’s testimony—

that Amy kept trying to regain control of the knife, defendant not only maintained

control of the knife throughout the remainder of the fight, but he also continued the

fight until Amy was killed.

 This Court has previously noted that “the lack of injuries to [the] defendant,

compared to the nature and severity of the wounds on [the victim] at his death, [was]

sufficient evidence from which a jury could find that [the] defendant was the

aggressor or that [the] defendant used excessive force.” State v. Presson, 229 N.C.

App. 325, 330, 747 S.E.2d 651, 656 (2013). Here, too, defendant had no visible injuries

aside from a few scratches which defendant admitted he sustained after running

through the woods the next morning. In contrast, Amy sustained stab wounds to the

eye and the neck, as well as lacerations on her back, shoulder, lip, cheek, temple,

hands, and fingers. Furthermore, the pathologist who performed the autopsy on Amy

testified that “[t]his [was] a textbook appearance of being stuck in a defense position.

. . . This is simply a classic example of defensive wounds . . . . [S]he was not striking,

but rather being struck.”

 Defendant’s text messages to Bradley prior to Amy’s killing also provide

sufficient evidence from which a jury could find that defendant was the aggressor.

From 8:11 p.m. until 8:21 p.m., defendant sent multiple text messages stating he was

going to kill Amy, even asking for lime (or “line,” as defendant’s referred to it) to help

 -9-
 STATE V. MUMMA

 Opinion of the Court

dispose of the body. As such, the jury could reasonably infer and find that defendant’s

testimony was not credible and that instead of fending off an attack from Amy, he

instead instigated the fight with her in order to kill her, as he stated earlier via text

message he wanted to do. Accordingly, the trial court did not err in instructing the

jury on the aggressor doctrine where sufficient evidence supported the instruction.

Defendant’s argument is overruled.

 II

 Defendant next argues the trial court erred by sending inflammatory

photographs of the decedent’s body to the jury deliberation room, over defendant’s

objection, in violation of N.C. Gen. Stat. § 15A-1233. Defendant contends that

sending the exhibits to the deliberation room without his consent constitutes error

and that considering the number and content of the photographs, as well as the

amount of time the jury viewed them, he was prejudiced by this error. We disagree.

 Whether the trial court has violated a statutory mandate is reviewed de novo.

State v. Ashe, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

 “Upon request by the jury and with consent of all parties, the judge may in his

discretion permit the jury to take to the jury room exhibits and writings which have

been received in evidence.” N.C. Gen. Stat. § 15A-1233(b) (2015). “Photographs of a

homicide victim may be introduced even if they are gory, gruesome, horrible or

revolting, so long as they are used for illustrative purposes and so long as their

 - 10 -
 STATE V. MUMMA

 Opinion of the Court

excessive or repetitious use is not aimed solely at arousing the passions of the jury.”

State v. Chapman, 359 N.C. 328, 350, 611 S.E.2d 794, 812–13 (2005) (quoting State

v. Blakeney, 352 N.C. 287, 309–10, 531 S.E.2d 799, 816 (2000)).

 In State v. Cunningham, the North Carolina Supreme Court noted that

“[a]lthough the defendant did not object to the sending of the exhibits to the jury

room, he did not consent to it as required by the statute.” 344 N.C. 341, 364, 474

S.E.2d 772, 783 (1996). However, the Supreme Court concluded that “[i]n light of the

strong evidence against the defendant, letting the jury have these items of evidence

in the jury room could not have affected the outcome of the trial[,]” and “[a]ssuming

this was error, it was harmless.” Id. (citation omitted).

 In the instant case, defendant filed a pretrial “Motion to Exclude Photographs”

and also objected to the jury’s request to see all photographic evidence during

deliberations, although he did acknowledge that the decision was “in the Court’s

discretion”:

 [Defendant’s attorney]: Your Honor, I know it’s in the
 Court’s discretion, but I would object. I’d prefer for them to
 rely on the testimony and recollection.

 THE COURT: Well --

 [Defendant’s attorney]: I mean, I know it’s in your
 discretion, Your Honor.

 THE COURT: In my discretion, I’m going to allow them to
 have all the photographs that have been introduced into
 evidence.

 - 11 -
 STATE V. MUMMA

 Opinion of the Court

 [Defendant’s attorney]: Yes, Your Honor.

 However, even if defendant “did not consent to [the jury’s request] as required

by the statute[,]” assuming it was error, it was harmless where defendant has failed

to establish that he was prejudiced in light of the overwhelming evidence of

defendant’s guilt. See id. (citation omitted).

 At trial, there were at least 170 or more photographic exhibits admitted into

evidence, many of which were indeed images of the deceased’s body or portions

thereof. However, those photographs showed the circumstances and position of the

deceased’s body as it was found at the scene and the photographs of the injuries,

including close-up views, were also relevant to show the type, severity, and number

of injuries sustained by the deceased. They were necessary to depict the extent and

nature of her injuries, as well as the location and position—inside a closet—in which

she was found by law enforcement. This photographic evidence was the best evidence

to help illustrate the responding officers’ testimony. Indeed, defendant did not object

to the admission of these photographs into evidence; he only objected to the trial

court’s decision to allow the photographs into the jury deliberation room. Defendant

has not established how he was prejudiced by the trial court’s decision to allow the

jurors to review photographic exhibits which they had already seen.

 In any event, there was more than sufficient evidence for a jury to find beyond

a reasonable doubt that defendant committed second-degree murder and did not act

 - 12 -
 STATE V. MUMMA

 Opinion of the Court

in self-defense. Dr. Davis testified that Amy was struck in a defensive posture and

that she “was not striking, but rather being struck.” According to defendant’s own

testimony, he obtained control and possession of the knife and proceeded to stab Amy

in the eye and the neck. Lastly, defendant’s several text messages sent to Bradley

prior to the murder also indicated that defendant intended to kill Amy. Defendant

stated repeatedly that he was going to kill Amy and asked for lime to help dispose of

the body.

 Based on all of the forgoing, even if it was error for the trial court to allow the

jury to review photographs of the deceased victim during jury deliberations without

defendant’s consent, this error was harmless where defendant has not established

that he was prejudiced thereby. Defendant’s argument is overruled.

 III

 Lastly, defendant contends the trial court erred by failing to intervene ex mero

motu during the State’s closing argument. Specifically, defendant contends the

prosecutor’s closing arguments were grossly improper as they injected the

prosecutor’s personal beliefs, appealed to the jury’s passion, and led the jury away

from the evidence. We disagree.

 “The standard of review for assessing alleged improper closing arguments that

fail to provoke timely objection from opposing counsel is whether the remarks were

so grossly improper that the trial court committed reversible error by failing to

 - 13 -
 STATE V. MUMMA

 Opinion of the Court

intervene ex mero motu.” State v. Jones, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002)

(citing State v. Trull, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998)).

 In other words, the reviewing court must determine
 whether the argument in question strayed far enough from
 the parameters of propriety that the trial court, in order to
 protect the rights of the parties and the sanctity of the
 proceedings, should have intervened on its own accord and:
 (1) precluded other similar remarks from the offending
 attorney; and/or (2) instructed the jury to disregard the
 improper comments already made.

Id.

 “The scope of jury arguments is left largely to the control and discretion of the

trial court, and trial counsel will be granted wide latitude in the argument of hotly

contested cases.” State v. Call, 349 N.C. 382, 419, 508 S.E.2d 496, 519 (1998) (citation

omitted). Closing arguments must “(1) be devoid of counsel’s personal opinion; (2)

avoid name-calling and/or references to matters beyond the record; (3) be premised

on logical deductions, not on appeals to passion or prejudice; and (4) be constructed

from fair inferences drawn only from evidence properly admitted at trial.” Jones, 355

N.C. at 135, 558 S.E.2d at 108.

 In the instant case, defendant challenges the following portions of the

prosecutor’s argument as “grossly improper”:

 But in this case, in this case, from the get-go, from the time
 you were seated . . . the State unequivocally, without any
 doubt, does not feel this defendant deserves the legal right
 to kill Amy Chapman in self-defense. That means he walks.

 - 14 -
 STATE V. MUMMA

 Opinion of the Court

 ....

 So from the get-go I will say it and will say it until this
 process is done and will continue to believe that. This
 defendant does not have the legal right to kill Amy
 Chapman in self-defense. He doesn’t get the opportunity to
 get any lesser included offense based on self-defense.

 ....

 [D]oes he have that right? Does he? You’re going to make
 that decision. I’ve made mine up.

 ....

 [Does] [defendant] have the right to kill Amy Chapman in
 self-defense? If you want to go back and deliberate and say
 yes, he did, then you’ve got to do what you’ve got to do. You
 got to do it. I respectfully disagree.

 ....

 It’s convenient now, after he’s been interviewed and then
 transcribed that he now changes his story from up on top
 of her, stabbing her, straddling her. Now they’re on the
 ground and she’s grabbing for his groin area and trying to
 get to the knife.

At this point, defendant objected and the trial court sustained the objection but gave

no curative instruction or otherwise instructed the prosecutor not to give his personal

opinion.

 . . . [W]hat was his interest in changing his statement to
 that, to that? One is possibly getting a self-defense
 instruction. So that’s what the law allows him to, based on
 the evidence that’s been presented through his testimony.

 ....

 - 15 -
 STATE V. MUMMA

 Opinion of the Court

 So we know he intended to kill her, because he’s offering
 self-defense. He’s offering self-defense. He got up here and
 says it was me or her. So what’s he saying? I intended to
 kill her. I intended to do it. I’m proud of it.

The prosecutor then referenced letters defendant wrote to his family:

 Oh, I couldn’t say much in my letters. I mean, come on.
 You’re talking to family here. It was an accident. I would
 hate to see what wasn’t an accident, you know.

 ....

 I went at 1:00 a.m. and went and saw [Robinson]. I was
 checking on him, he’s got diabetes. Are you kidding me?
 Hate to keep using that. . . .
 No, it’s because you hope he didn’t hear anything,
 and you’re making sure he didn’t. That’s what he was
 doing. That’s what he was checking on. Checking on his
 diabetes, give me a break.

 Error will not be found “in a trial court’s failure to intervene in closing

arguments ex mero motu unless the remarks were so grossly improper they rendered

the trial and conviction fundamentally unfair.” State v. Allen, 360 N.C. 297, 306–07,

626 S.E.2d 271, 280 (2006) (emphasis added) (citing Call, 349 N.C. at 419–20, 508

S.E.2d at 519). “[T]he impropriety of the argument must be gross indeed in order for

this Court to hold that a trial judge abused his discretion in not recognizing and

correcting ex mero motu an argument which defense counsel apparently did not

believe was prejudicial when he heard it.” State v. Smith, 359 N.C. 199, 218, 607

S.E.2d 607, 621 (2005) (alteration in original) (quoting State v. Kemmerlin, 356 N.C.

 - 16 -
 STATE V. MUMMA

 Opinion of the Court

446, 470, 573 S.E.2d 870, 887 (2002)).

 In the instant case, the challenged portions of the prosecutor’s closing

argument—and to which defendant did not object at trial—when taken in context of

his entire argument, draw reasonable inferences based on defendant’s inconsistent

statements and point out those inconsistencies in defendant’s testimony. The

prosecutor’s asides such as “Are you kidding me?” and “give me a break” and “come

on,” do not reflect the prosecutor’s personal opinion, but rather point out

inconsistencies in defendant’s testimony. Further, with regard to the prosecutor’s

statement that he would “respectfully disagree” with the jury if they decided to

deliberate and find that defendant killed Chapman in self-defense, even if this

argument was improper, it was not so grossly improper as to render the trial and

conviction “fundamentally unfair” and warrant the trial court’s intervention ex mero

motu. See State v. Gladden, 315 N.C. 398, 426, 340 S.E.2d 673, 690 (1986) (finding

that it was not so grossly improper for the trial court to decline to intervene ex mero

motu where the prosecutor argued that he “probably wouldn’t [tell the truth] either”

if he “was in [the defendant’s] shoes”); cf. State v. Walters, 357 N.C. 68, 102–05, 588

S.E.2d 344, 363–66 (2003) (finding the prosecutor’s argument improper where he

compared the defendant to Adolf Hitler, over the defendant’s objection, by imploring

the jury to “stand up to evil” like Winston Churchill did “when he stood up to Hitler,”

but also finding that the “necessary showing of prejudice was not met”).

 - 17 -
 STATE V. MUMMA

 Opinion of the Court

 Accordingly, where the prosecutor’s argument was not so grossly improper as

to render defendant’s trial and conviction fundamentally unfair, the trial court did

not err when it declined to intervene ex mero motu during the prosecutor’s closing

argument. Defendant’s argument is overruled.

 NO PREJUDICIAL ERROR.

 Judge DILLON concurs.

 Judge ARROWOOD dissents in a separate opinion.

 - 18 -
 No. COA17-481 – State v. Mumma

 ARROWOOD, Judge, dissenting.

 I respectfully dissent from the Majority Opinion’s holding that the trial court

did not commit prejudicial error in sending photographs of the decedent’s body to the

jury room over defendant’s objection.

 N.C. Gen. Stat. § 15A-1233(b) (2017), in pertinent part, provides: “Upon

request by the jury and with consent of all parties, the judge may in his discretion

permit the jury to take to the jury room exhibits and writings which have been

received in evidence.” (Emphasis added.)

 In the present case, on 19 June 2016, the jury retired to deliberate at 10:05

a.m. At 10:56 a.m., the jury asked a question regarding punishment. The court

properly instructed them that punishment was not a matter for them to consider,

whereupon the jury took their morning break. Immediately upon the jury’s return

from the morning break at 11:21 a.m., the jury asked for all the photographs to be

sent to the jury room. Defendant objected. In spite of this objection, the court stated

that, in its discretion, it was going to permit the photographs to be sent to the jury

room.

 At approximately 11:31 a.m., the court had the approximately 179 photographs

that were admitted into evidence sent to the jury room. Many of these photographs

were from the autopsy to which defendant had previously objected. The jury took a

lunch recess from approximately 12:26 p.m. until 1:58 p.m. Approximately two hours
 STATE V. MUMMA

 ARROWOOD, J., dissenting

later, the jury indicated it was deadlocked 11-1. The court then gave an Allen charge

and permitted the jury to take a 15 minute break. After deliberating an additional

45 minutes, the jury returned a verdict of guilty of second-degree murder. The

objected to photographs were the only exhibits in the jury room during the

deliberations.

 Allowing the jury to receive the photographs in the jury room over defendant’s

objection was error. See State v. Huffstetler, 312 N.C. 92, 114, 322 S.E.2d 110, 124

(1984). The issue thus becomes whether the error was prejudicial.

 N.C. Gen. Stat. § 15A-1443(a) (2017), in pertinent part, provides: “A defendant

is prejudiced by errors relating to rights arising other than under the Constitution of

the United States when there is a reasonable possibility that, had the error in

question not been committed, a different result would have been reached at the trial

out of which the appeal arises.” The burden is on the defendant to establish this

prejudice. See State v. Milby, 302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981).

 When considering the circumstances of this case in their entirety, including:

the large number of photographs (179), the fact that many of the photographs were

graphic, the fact that only the photographic evidence was taken to the jury room, the

fact that the improper photographs were in the jury room for almost the entire

deliberation, and, particularly noteworthy, the facts that the jury was deadlocked to

the extent that an Allen charge was necessary and that the court provided

 2
 STATE V. MUMMA

 ARROWOOD, J., dissenting

instructions and verdict sheets to the jury with various options to find defendant

guilty, I believe defendant has met his burden of establishing there is a reasonable

possibility that, had this error not been committed, a different result would have been

reached.

 Therefore, I vote to reverse this case and remand this matter to Swain County

Superior Court for a New Trial.

 3